## RAYMOND GAGNON'S CASE.

Worcester.   October 1, 1917. — October 23, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Workmen's Compensation Act. Evidence,* Appearance of witness.   *Words,*
"Wages."

Under St. 1915, c. 236, providing that, "Whenever an employee is injured under circumstances that would entitle him to compensation under the provisions of chapter seven hundred and fifty-one of the acts of the year nineteen hundred and eleven, and acts in amendment thereof and in addition thereto, if it be established that the injured employee was of such age and experience when injured that, under natural conditions, his wages would be expected to increase, that fact may be taken into consideration in determining his weekly wages," the word "wages" means the wages earned in the particular employment out of which the injury arose.

Under St. 1915, c. 236, it is proper for an arbitration committee and the Industrial Accident Board to consider the personal appearance of the injured employee upon the witness stand in passing upon the question whether his seeming intelligence, health and aptitude for the work in which he was employed would have been likely to receive recognition by an increase of his wages by his employer if the injury had not been received.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board in regard to the construction of St. 1915, c. 236, in passing upon the claim to compensation of Raymond Gagnon, who at the time of his injury on June 8, 1916, was in the employ of the Stoddard Rubber Company at Millbury.

The case was heard by *O'Connell,* J. The report of the Industrial Accident Board stated that the board made, with two other

rulings likewise requested, the following rulings requested by the employee:

"3. In determining 'weekly wages' under St. 1915, c. 236, the committee of arbitration is not limited to the probable increase in the same industry in which the employee was working at the time of the accident.

"4. In determining 'weekly wages' under St. 1915, c. 236, the committee of arbitration is not limited to the probable increase in the particular company for which the employee was working at the time of his injury.

"5. In determining 'weekly wages' under St. 1915, c. 236, the committee of arbitration is entitled to consider the personal appearance of the injured employee, his age and experience, his physical strength, his mental ability, his character, his family conditions, his station in life, his plans for the future if the accident had not occurred; that is, the committee is entitled to take into account every fact and condition which appears as to the personality of the injured employee himself, and as to all of his prospects in the future under the natural conditions confronting him before the accident in determining what his probable average wages would be under such conditions for the period of time covered by the act."

The report also stated that the board refused, with other rulings likewise requested, to make the following ruling requested by the insurer:

"2. In determining weekly wages, under St. 1915, c. 236, the committee of arbitration is entitled to consider the probable natural increase in the wages of the injured party in the same employment in which he was engaged when injured, and cannot take into consideration the possible conjectural increase in wages which might be earned in the future by the injured employee in any possible conjectural position, employment or station in life."

St. 1915, c. 236, is entitled "An Act relative to compensation to young and inexperienced workmen who receive injuries." All the material portion of the act is quoted in full in the opinion.

The report of the Industrial Accident Board was filed on March 31, 1917. The employee, Raymond Gagnon, testified before the board that he was eighteen years old. The board found "that the average weekly wages of the employee, Raymond Gagnon, under

St. 1915, c. 236, and the general provisions of the workmen's compensation act, had it not been for the occurrence of the injury, would have been $12 a week at the end of one year from the date of the injury, that is, June 8, 1917; and that on June 8, 1918, he would have been able to earn an average weekly wage of $20."

The judge made a decree in accordance with the decision of the Industrial Accident Board ordering that the insurer should pay to Raymond Gagnon "the total sum of $2,095.21, with interest thereon, according to law." The insurer appealed.

The case was submitted on briefs.

*A. H. Bullock, J. M. Thayer & E. C. Thayer*, for the insurer.

*M. M. Taylor & M. C. Taylor*, for the employee.

RUGG, C. J. This case involves the construction of St. 1915, c. 236. It is in these words: "Whenever an employee is injured under circumstances that would entitle him to compensation under the provisions of chapter seven hundred and fifty-one of the acts of the year nineteen hundred and eleven, and acts in amendment thereof and in addition thereto, if it be established that the injured employee was of such age and experience when injured that, under natural conditions, his wages would be expected to increase, that fact may be taken into consideration in determining his weekly wages." The purpose of the workmen's compensation act was to substitute, as between employee and employer in the cases to which it is applicable, for common law or statutory rights of action and grounds of liability, a system of money payments based upon the loss of wages. It was stated in the Report of the Massachusetts Commission on Compensation for Industrial Accidents, at page 46, in submitting to the Legislature in 1912 a commentary on the workmen's compensation act, that "The basic principle of the act is that the cost of the injuries incidental to modern industry should be treated as a part of the cost of production. The act was framed with that end in view." Doubtless this was one of the chief causes moving the Legislature to the enactment of the statute. The act makes all payments of compensation within certain limitations depend absolutely upon the "average weekly wages" received by the employee. St. 1911, c. 751, Part II, §§ 6, 9, 10 and 11, as amended by St. 1914, c. 708, §§ 2, 4, 5, 6. Those words are defined in Part V, § 2, as follows: "'Average weekly wages' shall mean the earnings of the injured employee during the period of twelve calen-

dar months immediately preceding the date of injury, divided by fifty-two; but if the injured employee lost more than two weeks' time during such period then the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted. Where, by reason of the shortness of the time during which the employee has been in the employment of his employer, or the nature or terms of the employment, it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned by a person in the same grade employed at the same work by the same employer; or, if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district."

It is plain that this definition confines the ascertainment of wages to the actual employment at the time of the injury, save in the single instance where that is impossible by reason of brief employment in a line of work unusual to the employer. This exception no doubt is almost negligible in comparison with the general scope of the act. Even this exception refers to the same class of employment in the neighborhood for the ascertainment of its standard. All our decisions touching this matter go upon that footing. *Gillen's Case,* 215 Mass. 96. *Gove's Case,* 223 Mass. 187. *Bartoni's Case,* 225 Mass. 349. This definition and the decisions rendered respecting it follow directly the "basic principle of the act" as above stated, to the effect that "the cost of injuries incidental to modern industry" should be regarded as a part of the cost of production. The average weekly wages is throughout the act ascertainable only by reference to the wages actually paid at the expense of the industry at which the employee is working. Save in carefully specified exceptions, it is to be ascertained only by reference to the wages paid by the particular employer to the injured employee. It is apparent that the standard for determining the entire cost of production, so far as it includes the cost imposed by the workmen's compensation act, may be found by reference to that particular industry and employer.

The amendment to the act now under consideration must be construed as far as is reasonably practicable so as to harmonize with the general purpose of the act and the machinery provided for its

administration. When the word "wages" is used in one definite sense with reference to a particular standard in one vital part of the act, it must be presumed that it is used with reference to the same standard elsewhere in the act and its amendments, unless a different meaning is plainly expressed. *Gillen's Case*, 215 Mass. at page 98. It follows that in ascertaining the wages under the instant statute the circumstances to which weight can be given must be confined to the particular employer and kind of industry in which the injury was received. The increase of wages to which weight may be given is that which might have been expected from the particular employer in conducting his industry "under natural conditions."

This interpretation is confirmed by practical considerations.

The scheme of the act is that the employer shall be insured against the losses from personal injury to employees arising out of and in the course of their employment. The cost of such insurance can be determined so long as the basis on which compensation is to be reckoned is wages paid by the employer. It can readily be determined so long as the standard fixed by the definition of average weekly wages in Part V, § 2, above quoted, is followed. But it would be a matter of utter uncertainty if the compensation to be paid should depend, not upon wages paid, but upon wages which the Industrial Accident Board after an injury may find upon independent evidence, perhaps not readily open to the employer during the period of employment, that the injured employee might have earned in some other employment or field of activity.

"Wages" as used in the statute must be taken to refer to the only wages referred to anywhere in the act (with the exception noted), namely, the wages earned in the particular employment out of which the injury arose. If any exception to this rule were intended, doubtless it would have been stated with the same explicitness with which the only exception in the definition is set forth.

It follows that there was error in granting requests 3, 4 and 5 of the employee and in refusing to grant request 2 of the insurer.

There was no error in considering the appearance of the employee in passing upon the question whether his seeming intelligence, health and aptitude for the work would have been likely to receive recognition by increase in wages by the employer if the

injury had not been received.  The inspection of a witness often is an important factor in the weight given to testimony by judge or jury.

It is not necessary to discuss the other questions argued by the insurer as they may not arise when the statute is applied correctly by the Industrial Accident Board.

*Decree reversed.*