# BALTIMORE CITY COURT.

Filed September 20, 1926.

STATE ACCIDENT FUND AND STATE OF MARYLAND MILITARY DEPARTMENT
VS.
CORBIN H. MERRILL.

*Assistant Attorney-General Willis R. Jones* for plaintiff.

*Herbert L. Grymes* for defendant.

SOLTER, J.—

Corbin H. Merrill was a duly warranted Corporal of the Maryland National Guard, and received the corporal's pay of $1.40 per day for each day of his actual employment in the National Guard. He enlisted for a period of three years, and his enlistment required him to obey the orders of his superior officers, including attendance at such drills, assemblies or encampments as might be ordered and he actually attended forty-eight evening drills during the period prior to an accident which he sustained at camp as hereafter stated. For these evening drills he received the pay of $1.40 per evening. On July 22nd, 1924, Corporal Merrill, with the Maryland National Guard, under orders from his superior officers, went to Virginia Beach to attend a camp of instruction for the period of fifteen days, during all which time he was required to obey all orders of his superior officers and for his obedience to these orders and the performance of the usual duties he received $1.40 per day. He worked seven days per week during the encampment; so that the amount paid to Corporal Merrill by the Maryland National Guard for the period he attended camp was at the rate of $9.80 per week. For his entire compensation during the entire year, including his compensation for attending drills and his wages at camp, he received $88.20. On August 5th, 1924, in the course of his employment as Cor-

poral he received an injury which incapacitated him for a time. He made application to The State Industrial Accident Commission, and upon proof of the aforegoing facts was awarded the minimum award of $8 per week during the disability. From this award the State Accident Fund as insurer and the State of Maryland Military Department appeal. The appellants contend that the compensation which should have been awarded Corporal Merrill should be upon the basis of his yearly earnings in the employment in which he was injured, divided by 52, because this would constitute his Average Weekly Wages.

As I am constrained to reverse the award of the Accident Commission and sustain the contention of the Military Department and as the result of the decision is such as gives Corporal Merrill practically no compensation for his disability, I feel that I should state the reasons for my decision, so that should they be correct, and further legislation be deemed necessary, proper action may be had.

Our Workmen's Compensation Act has no further definition of what constitutes Average Weekly Wages than that found in Section 65 of Article 101 of the Code. This section reads as follows:

"Average Weekly Wages" for the purpose of this Article shall be taken to mean the average weekly wages earned by an employee when working on full time."

The scheme of workmen's compensation is not that every injured employee should receive compensation for his injury upon the same basis that he might have received as the result of an accident caused by the negligence of some other person but the plan is one of insurance, and must be approached from this standpoint. The underlying idea is that the industry in which an accident occurs shall be charged with certain specified sums out of which compensation to an injured employee will be granted as part of the cost of production. As was said in the case of Picanardi vs. Hotel Emerson, 135 Md. 92, 94, "It is quite clear that it is the purpose of the Workmen's Compensation Act to secure the payment of benefits, not from unknown and uncontrolled assets of the individual employers, but, ordinarily, at least, from a fund set apart in advance of losses, either in the shape

of the State Accident Fund or in the shape of insurance. This fund is to be made up of premiums payable from time to time; and to the extent that experience makes it possible to foresee the premiums are calculated to equal in the aggregate the benefits to be paid—in addition to incidental expenses with which we are not concerned. All the provisions of the Act concerning security for compensation are carefully designed to effectuate this plan. * * * The funds to pay the losses, then, are to be made up of an aggregate percentage of money paid on payrolls, this aggregate being an estimate of the aggregate losses to be paid."

As to average weekly earnings which form the basis of the award under the statutes, the amount earned by an employee in the particular employment in which he was engaged at the time of the injury is the controlling factor. All of the American statutes make this the starting point. Should the workman be engaged in several kinds of work, that is, working for several employers, and be injured in the employ of any one of them, his earnings in the work he was actually performing at the time of the injury is the basis, and any other earnings received by him from other employers or employments are usually ignored, unless the statute expressly provides otherwise. Thus, if a college professor should use his vacations to work as instructor in a summer camp, and be injured while employed in such camp, his compensation would be based upon his earnings in the camp, computed upon a yearly basis. Kapler vs. Camp Taghonic, 213 N. Y. Supp. 160, January 1926. This case just cited is commented upon in 35 Yale Law Journal 36, where many of the cases upon this point are to be found. The wages paid Kapler were two hundred dollars for two months' work, and it was considered that this sum likewise constituted his annual earnings in this particular employment, and this was divided by fifty-two to arrive at his average weekly earnings. As the commentator in this article points out, the employer could have insured upon the basis of $25.00 a week for the employee covering a period of two months, and the college which employed him during the winter have insured him at the salary it paid him for the period of ten months. But the Court held rigidly to the rule of averaging the total yearly earnings from the employment in which he was injured upon a weekly basis and reversed the State Accident Commission, which had taken into account his earnings as a teacher.

A summary of the rules followed by the American Courts in determining average weekly wages is found in the brochure on Workmen's Compensation Acts published by Corpus Juris at page 89, as follows:

"(1) Where there has been a continuous employment for the preceding year the average weekly earnings are to be arrived at by a simple division of the annual earnings, some of the acts providing for lost time. (2) Where the employee has not been so employed, but has worked for such a length that his average daily earnings may be fixed, his yearly earnings are to be taken as three hundred times such average daily earnings, and his average weekly earnings are arrived at by division of the amount so obtained. (3) Where the employee has not worked for a sufficient time to afford data from which to determine his annual earnings, then the wages of earnings of an employee in the same employment and locality may be taken as a standard. (4) Where the preceding methods cannot fairly and reasonably be applied, then the weekly earnings are to be ascertained from such sum as reasonably represents the annual earning capacity of the employee in the employment in which he was working when injured, taking into consideration his previous earnings and the earnings of other employees in the same or the most similar employment in the same locality."

A case illustrative of how "average weekly wages" are computed is King's case, 234 Mass., 137. This case is important because the Massachusetts Statute is very comprehensive in its directions as to how "average weekly earnings" shall be computed. The facts of the King case are as follows: King had two employments. He worked as printer week days until Saturday noon for one employer, and Saturday nights he worked for the Globe Printing Company and received $9.29 for each night's work. He was injured while working for the Globe Printing Company. The Industrial Accident Board awarded compensation based upon the weekly wage of $31.52,

that being the average weekly amount earned by a person in same grade employed at the same work by the same employer. The insurer contended that the weekly compensation should be $6.13, based upon a weekly wage of $9.29.

King was employed by the newspaper company for twelve calendar months immediately preceding the date of his injury. Because he worked for this company but one night each week during that time, the Industrial Accident Board found that while so employed, it was impracticable to compute his average weekly wages by dividing his earnings during the twelve preceding calendar months by fifty-two.

The Appellate Court reversed the commission, and decided that the amount of compensation was that contended for by the insurer and said "The amount earned by an employee in a particular employment should govern in all cases, in computing the compensation under the Workmen's Compensation Act, unless the computation becomes impracticable; and the wages which determine the compensation with the exceptions referred to are the wages earned in the employment where the injury happens. The cost of insurance to the employer is determined by the wages the employee received in the employment, and it is presumed that this is shown by the pay roll. Gagnon's case 228 Mass. 334, 337, 338."

The conclusion to be reached in this case is that the annual earnings in the National Guard of Corporal Merrill for the year preceding the accident amounting to $88.20, are to be divided by fifty-two, and the quotient $1.70 represents his average weekly earnings while working on full time in the employment in which he was injured. It is impossible to segregate his earnings while at camp from his earnings at drill during the remainder of the year, for the reason that his employment as a member of the National Guard during the year was continuous. Had he been injured while at drill, during the other portion of the year, his earnings would be computed upon this same basis, and the result would be the same.

It is quite manifest that in this particular case, the compensation is grossly inadequate, and amounts to practically no compensation. Should the conclusion I have been obliged to reach be upheld it would be a simple matter for

the Legislature to amend the Workmen's Compensation law in so far as it relates to the National Guard by making an adequate fixed minimum award apply to all enlisted men injured in the service, if the injuries are such as to prevent them from following their customary avocations.