ALBERT BURSEY'S CASE.

Suffolk.    April 4, 1950. — April 28, 1950.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Amount of compensation.  *Statute*, Construction.

It is to be presumed that upon reënacting a statute without material change the Legislature adopts previous judicial construction thereof.

In determining, under G. L. (Ter. Ed.) c. 152, § 51, whether an increase in wages would be expected, the factors to be considered must be confined to the particular employer and kind of industry in which the injury was received; following *Gagnon's Case*, 228 Mass. 334.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The claimant appealed from a decree entered by order of *Dowd*, J.

*J. H. Morris*, for the claimant.

*L. Brown*, (*W. P. Cunningham* with him,) for the insurer.

WILKINS, J.  On June 17, 1941, the employee, then nearly twenty-two years of age, sustained a head injury while engaged in work as a laborer.  Under an approved agreement, he was paid total incapacity compensation at the weekly rate of $18, based upon an average weekly wage of $33.04, from April 26, 1944, when disability began, to August 7, 1944, and from August 13, 1944, to November 29, 1945.  He also was paid specific compensation for loss of vision in one eye.  Subsequently, there was a hearing before a single member, whose findings were adopted by the reviewing board.  When injured, the employee earned sixty-seven and one half cents an hour.  At no later time did he earn less. On November 29, 1945, he was given employment as a painter for the same employer.  For 1945 his average weekly earnings were $46.51.  In 1947 up to the end of February

his earnings were $59.51. The single member concluded, "I find and rule that the employee has not sustained the burden of proving that he is entitled to an increase in wages under § 51 of the [workmen's compensation] act." In dismissing the claim, the reviewing board "expressly reserve[d] the employee's further and future rights under § 51."

Upon a new hearing, the single member adhered to his previous ruling. This time, however, the reviewing board reached the opposite conclusion, stating in part: "The board finds and rules that as result of the injury the employee sustained on June 17, 1941, he lost the vision of his left eye on April 26, 1944, and that one year after the loss of his vision, that is, April 26, 1945, his earning capacity had been impaired to the extent of $15 per week and that impairment has been effective up to the present time and continuing. The insurer is ordered to pay the employee partial compensation at the rate of $10 per week from April 26, 1944, through the date of filing of this decision and to continue to make payments in accordance with the terms of the act. There is due the employee to the date of the filing of this decision, compensation in the sum of $2,110."[1] In the Superior Court a decree was entered that the employee "is not entitled to an award of further compensation on the basis of any increased determination of his weekly wages under the provisions of G. L. (Ter. Ed.) c. 152, § 51, and his claim for compensation is hereby dismissed without prejudice to his rights to claim compensation for future incapacity resulting from said injury." The employee appealed.

The insurer contends at the outset that the board lacked power to revise the agreement between the employee and the insurer approved by the board. See G. L. (Ter. Ed.) c. 152, § 6, as amended by St. 1945, c. 347; *Perkins's Case*, 278 Mass. 294, 299; *Virta's Case*, 287 Mass. 602, 605. See also G. L. (Ter. Ed.) c. 152, § 2A, inserted by St. 1946,

---

[1] The employee concedes that it was error to award him partial compensation from April 26, 1944, when he was paid total compensation to November 29, 1945. The employee's contention is that partial compensation should begin on the latter date.

c. 386, § 3. We pass over this point in order to deal with the merits of the question principally considered by the reviewing board and also decisive of the case.

General Laws (Ter. Ed.) c. 152, § 51, first enacted as St. 1915, c. 236, reads: "Whenever an employee is injured under circumstances entitling him to compensation, if it be established that the injured employee was of such age and experience when injured that, under natural conditions, his wages would be expected to increase, that fact may be considered in determining his weekly wages."

In 1917 this section was held in *Gagnon's Case*, 228 Mass. 334, to be governed by the definition of "average weekly wages" in the workmen's compensation act.[1] We quote from the opinion, written by Chief Justice Rugg, at page 338: "[I]n ascertaining the wages under the instant statute the circumstances to which weight can be given must be confined to the particular employer and kind of industry in which the injury was received. The increase of wages to which weight may be given is that which might have been expected from the particular employer in conducting his industry 'under natural conditions.' This interpretation is confirmed by practical considerations. The scheme of the act is that the employer shall be insured against the losses from personal injury to employees arising out of and in the course of their employment. The cost of such insurance can be determined so long as the basis on which compensation is to be reckoned is wages paid by the employer. It

---

[1] This definition remains today substantially the same as in the applicable statute quoted in *Gagnon's Case* (pages 336–337). General Laws (Ter. Ed.) c. 152, § 1 (1), reads: " 'Average weekly wages', the earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two; but if the injured employee lost more than two weeks' time during such period, the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted. Where, by reason of the shortness of the time during which the employee has been in the employment of his employer or the nature or terms of the employment, it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned by a person in the same grade employed at the same work by the same employer, or, if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district."

can readily be determined so long as the standard fixed by the definition of average weekly wages . . . is followed. But it would be a matter of utter uncertainty if the compensation to be paid should depend, not upon wages paid, but upon wages which the Industrial Accident Board after an injury may find upon independent evidence, perhaps not readily open to the employer during the period of employment, that the injured employee might have earned in some other employment or field of activity. 'Wages' as used in the statute must be taken to refer to the only wages referred to anywhere in the act (with the exception noted), namely, the wages earned in the particular employment out of which the injury arose. If any exception to this rule were intended, doubtless it would have been stated with the same explicitness with which the only exception in the definition is set forth."

The decision of the reviewing board, after a finding that the employee had the requisite age and experience under § 51, went on to say: "The next requirement is that under natural conditions his wages would be expected to increase. The employee has demonstrated that under unnatural conditions, that is, with the loss of vision of one eye, his wages have increased. This being so, it seems to follow as a foregone conclusion that his wages would have been increased under natural conditions. The difficulty, however, is that in *Gagnon's Case*, 228 Mass. 334, the court has very definitely restricted the meaning of natural conditions. . . . If this case must be decided under the rules set down in *Gagnon's Case*, the board has no choice but to affirm the decision of the single member and rule that the employee is without rights under § 51."

The board, nevertheless, proceeded to decide that that case was no longer binding upon it, saying: "In *Gagnon's Case* the court stated [pages 337–338], 'The amendment to the act now under consideration must be construed as far as is reasonably practicable so as to harmonize with the general purpose of the act and the machinery provided for

its administration.' With this statement in mind, the board is of the opinion and rules, that in determining the employee's rights under § 51 of the act, it is not limited in so determining his rights to the particular industry and employer. The board rules that in so determining his rights in order 'to harmonize with the general purpose of the act' it has a right to consider, if under natural conditions, in the open labor market his wages would be expected to increase." The board referred to the following four sections of the workmen's compensation act, which it thought showed that the legislative intent was not limited as stated in *Gagnon's Case:* G. L. (Ter. Ed.) c. 152, § 1 (1), as amended by St. 1935, c. 332, § 1, which added to the definition of "average weekly wages" a provision that in case an employee is employed in the concurrent service of more than one insured employer his total earnings from the several insured employers are to be considered in determining his average weekly wages; § 35A, inserted by St. 1945, c. 717, as amended by St. 1946, c. 553, providing a fixed additional compensation for each dependent; § 37, respecting second injuries, and § 37A, inserted by St. 1945, c. 623, § 2, relating to disabled veterans, both providing for half payment by the State treasurer from other funds.

We cannot subscribe to this reasoning. The four sections cited fall far short of showing any legislative policy at variance with *Gagnon's Case.* On the other hand, in the enactment of the General Laws not only the definition of "average weekly wages" was substantially retained but no change of importance was made in St. 1915, c. 236, which became G. L. c. 152, § 51. "It is a well settled rule of statutory interpretation that, when a statute after having been construed by the courts is reënacted without material change, the Legislature are presumed to have adopted the judicial construction put upon it." *Nichols* v. *Vaughan,* 217 Mass. 548, 551. *Dolan* v. *Commonwealth,* 304 Mass. 325, 332–333. *Hertrais* v. *Moore, ante,* 57, 61.

More than thirty years have now elapsed since the decision in *Gagnon's Case.* If the Legislature had cared to

make any change, ample opportunity has been afforded. Many contracts of insurance and computations of insurance reserves have been made upon the faith of the statutory interpretation made in it. This is not a time nor an occasion for this court or an administrative board to reverse the fundamental concepts of our workmen's compensation act. Under our system of government there are those who are charged with the duty of considering such questions, and there is an orderly procedure for carrying out whatever they may determine. The claim was rightly dismissed in the Superior Court.

*Decree affirmed.*