Leonard COFFIN

v.

HANNAFORD BROTHERS CO., et al.

Supreme Judicial Court of Maine.

Jan. 24, 1979.

Monaghan & Leahy by Joan M. Kidman (orally), Portland, for plaintiff.

Norman & Hanson by Stephen Hessert (orally), Robert F. Hanson, Portland, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

The sole issue before us in this appeal from a pro forma decree affirming the decision of the Workers' Compensation Commission [1] is the propriety of including, in the computation of average weekly wage under 39 M.R.S.A. § 2(2), a pay increase ratified after employee's injury but made retroactive to a pre-injury date. It is conceded that the employee-appellant sustained a compensable injury arising out of and in the course of his employment.

On November 19, 1976, while working in appellee's employ as a warehouseman, appellant sustained serious injuries as a result of the heavy lifting required of him in his job. After the accident, Mr. Coffin signed an agreement for payment of compensation, which was approved by the Bureau of Labor on December 28, 1976. In that agreement the employee's "*average weekly wage*" was computed as $204.98, with a corresponding compensation rate of $136.63 weekly. This average wage had been computed using an averaging method based on a wage schedule listing employee's rate of pay as $5.20 an hour.

In December, 1976, pursuant to union contract negotiations, the employee's hourly rate was increased from $5.20 to $5.65, retroactive to the week beginning September 19, 1976. The employer amended the wage schedule to reflect that increase, and paid the employee a corresponding adjustment based on the pay differential from September 19 to the time of his injury.

Subsequently, the employee brought a petition to annul the agreement, alleging that it was the result of mistake of fact or of fraud. [2] Having in the meantime resumed working for his pre-injury employer, but at lower wages than he had previously received, the employee also filed a petition for further compensation. At a hearing on the petition to annul it was also discovered that the employee had been concurrently employed by another business for more than a year prior to his injury.

By decrees dated July 17, 1978, the Commissioner made findings of fact leading him

---

1. The name of the Industrial Accident Commission was changed to Workers' Compensation Commission by P.L.1978, c. 612.

2. *See St. Pierre v. St. Regis Paper Company,* Me., 386 A.2d 714, 720 (1978).

to order that compensation be increased in light of employee's concurrent employment, and making other adjustments respecting his return to employment. The Commissioner declined, however, to include the employee's retroactive wage in the computation of average weekly wage, rejecting use of the $5.65 wage rate on the ground that this was "*not* 'the amount which he was receiving at the time of the injury'", as specified in 39 M.R.S.A. § 2(2)(A). From the pro forma affirmation of this decree the employee appeals; no cross-appeal has been taken by the employer with regard to any other aspect of the decree.

We sustain the appeal.

The statutory scheme for determining average weekly wages was set forth fully in our recent decision in *St. Pierre v. St. Regis Paper Co.*, Me., 386 A.2d 714 (1978). We there noted the three possible methods of determining wages under 39 M.R.S.A. § 2(2), and stated that the method to be applied in a given instance depended upon the length of employment at the time of injury and the degree to which the employee's wages had been constant or variable. We further noted that the methods were to be applied not as a matter of choice but in the order in which they were set forth by the statute.

The usual method of computation, and the one which the Commissioner found appropriate here, appears in paragraph (A) of § 2(2). This provision, applicable to those employed by the employer for at least 200 full working days during the year preceding the injury, provides that:

> "Average weekly wages, earnings or salary" *of an injured employee shall be taken as* the amount which he was receiving at the time of the injury *for the hours and days constituting a regular full working week* . . .. 39 M.R.S.A. § 2(2)(A) (emphasis supplied).

We agree with the Commissioner that § 2(2)(A) provides the proper method of wage determination; we do not agree, however, that this section precludes incorporation of the retroactive wage increase.

Appellee contends that the statute unambiguously allows consideration only of those sums the employee was *actually* receiving when injured, and that appellant asks the Court to act legislatively, altering the statute to read "*entitled to receive.*" Further, appellee notes, the employee was not even entitled to receive the higher rate when injured, since the new contract was not ratified until after the injury.

We think the issue requires greater subtlety of analysis. The employer cites our decisions in *In Re Belgrade Shores, Inc.*, Me., 359 A.2d 59 (1976), and *Union Mutual Life Insurance Co. v. Emerson*, Me., 345 A.2d 504 (1975), to support the rule that, as appellee phrases it, "*words of a statute must be given a common sense meaning that men of common intelligence would recognize.*" That formulation, however, is somewhat incomplete; in *Union Mutual*, for example, we stated such a rule, but accompanied it by the caveat "*unless the act discloses a legislative intent otherwise,*" 345 A.2d at 507. In the instant case, our statutory obligation to construe the act liberally in favor of the employee, 39 M.R.S.A. § 92, may constitute such a manifestation. Reading "*receiving*" literally may be incompatible with construing the statute liberally. Moreover, a literal reading may not recognize "*the natural import of the terms used,*" *Belgrade Shores, supra,* 359 A.2d at 63.

Professor Larson, discussing this issue in his treatise, hypothesizes a claimant who, although employed pursuant to a contract specifying his compensation rate, is injured prior to receiving any wages. Larson reasons:

> *Obviously no court would hold that the employee's 'average weekly wage' for that period was zero . . . it becomes necessary to use as a basis for wage calculation not what the employee was in fact paid but what he was* entitled *in law to be paid* . . .. 2 Larson, *The Law of Workmen's Compensation,* § 60.11 (1976).

"*Receiving*", within the context of the statute, then, is susceptible of a "*common

*sense meaning"* which extends beyond its literal meaning: in proper circumstances, *"receiving"* may in fact require construction as *"entitled to receive."* To narrowly construe the language could produce an absurd result.

In Larson's hypothetical, it is clear that although no wages had been *paid*, the employee would be entitled to compensation during disability. The date on which wages are *paid*, therefore, must be distinguished from the date on which they are *earned.* The right to receive a retroactive wage increase vests when the work is performed, not when the increase is ratified. *See Norwalk, City of & Firefighters, Local 830*, 58 Lab.Arb. 1281 (Conn.Bd.1972). That the wages earned were paid only retroactively at a later date does not make them any less a part of the employee's earnings for that period. Similarly, that the contract establishing the revised wage scale was not ratified until after the injury does not deprive them of their nature as compensation earned for work performed prior to the injury. *See Braniff Airways, Inc.*, 11 Lab. Arb. 77 (Broadwin 1948).

In reaching this conclusion we seek the intent of the legislature not merely in their use of the single word *"receiving"*, but in their announced aims in enacting the Workmen's Compensation Act. As we also noted in *Belgrade Shores, supra* :

> *in order to perceive the legislative intent in relation to any particular section of a statute consideration must be given to the whole system of which the section at issue forms a part* . . . . 359 A.2d at 61 (emphasis supplied).

Our worker's compensation system, particularly insofar as it is designed to produce an approximation of earning capacity from which to calculate benefits, seeks to estimate what the employee would be earning during the time of his disability were he not injured. *Landry v. Bates Fabrics, Inc.*, Me., 389 A.2d 311, 313 (1978). Larson describes these purposes:

> *The entire objective of wage calculation is to arrive at a fair approximation of claimant's future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.* 2 Larson, *supra*, § 60.11.

Even if it was otherwise logically defensible, then, a narrowly literal reading of the section is thus inconsistent with the rest of the Act. The retroactive increase involved here is a clear indication of the employee's earning capacity as it may reasonably have been expected to continue in the future [3] had the employee not suffered the work-related injury. It, therefore, should not have been excluded in the computation of *"average weekly wage"* under 39 M.R.S.A. § 2(2)(A).

The entry is:

Reversed and remanded to the Superior Court with instructions to remand to the Workers Compensation Commission for recomputation of employee's average weekly wage under 39 M.R.S.A. § 2(2)(A) by including the retroactive wage increase.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

DELAHANTY, J., did not sit.

---

3. More significantly, it is a clear indication of employee's earning capacity *at the time of the injury*, which is the moment to which § 2(2)(A)

specifically directs us, and upon which our resolution of this issue fundamentally rests.