Kenneth CLARK

v.

RUST ENGINEERING CO., et al.

Kathy DOSTIE

v.

S.D. WARREN CO.

Supreme Judicial Court of Maine.

Argued May 20, 1991.

Decided July 26, 1991.

Maurice A. Libner (orally), McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for Employees.

John A. Woodcock, Jr., Weatherbee, Woodcock, Burlock & Woodcock, Bangor, for Georgia–Pacific, Cianbro Corp., University of Maine, Champion Intern., and Lincoln Pulp & Paper, amici curiae.

John H. King, Willian O. LaCasse, and Julia A. Finn, Norman, Hanson & Detroy, Portland, for Bath Iron Works, Boise Cascade, C.M.P., and Intern. Paper, amici curiae.

Robert J. Piampiano, Richarson & Troubh, Portland, for United Parcel Service, amicus curiae.

James C. Hunt (orally) and Elizabeth A. Williams, Robinson, Kriger, McCallum & Greene, Portland, for Rust Engineering.

Robert J. Piampiano (orally) and Allan M. Muir, Richardson & Troubh, Portland, for S.D. Warren.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

Rust Engineering Co. (Rust Engineering), employer of Kenneth Clark, and its insurance carrier, Continental Loss Adjusting Services (Continental), and S.D. Warren Co. (S.D. Warren), employer of Kathy Dostie, in these consolidated appeals from judgments of the Workers' Compensation Commission Appellate Division (Appellate Division) reversing decisions of the Commission, challenge the applicability of *Ashby v. Rust Engineering Co.*, 559 A.2d 774 (Me. 1989), to the facts of these cases. Dostie cross-appeals contending that the Appellate Division erred by excluding mandatory employer contributions to social security insurance from the computation of her average weekly wages.[1] We affirm the judgment of the Appellate Division in *Clark*.

---

1. Dostie also contended that the Appellate Division erred in excluding from the computation of her average weekly wages the payments made to unemployment insurance, but abandoned this contention at the oral argument of this case. Accordingly, we do not address this issue.

In *Dostie* we vacate the decision of the Appellate Division.

## I

Kenneth L. Clark, Jr. received a compensable injury on May 5, 1986, while employed as an iron worker by Rust Engineering. The collective bargaining agreement committed the employer to a specific hourly rate of pay and an additional specific amount for each hour Clark worked to be paid to the union for various union-established funds for employee benefits. Following the *Ashby* decision on May 31, 1989, in which we held that certain payments to union-established funds fall within the definition of "average weekly wages," as set forth in 39 M.R.S.A. § 2(2) (1989 & Supp. 1990),[2] Clark petitioned the Commission to fix his average weekly wages based on a computation including not only his specific hourly rate of pay but the additional specific hourly amount paid by Rust Engineering to the union for the various union-established funds for employee benefits. The Commission held that *Ashby* should be applied only to cases where the injury occurred after May 31, 1989 and denied Clark's petition. The Appellate Division reversed the Commission's decision, and Rust Engineering and Continental appeal.

The sole contention of Rust Engineering and Continental is that the rule of *Ashby* should be limited to prospective application. Their argument in support of this contention is threefold: (1) because *Ashby* overruled settled law the Commission properly used the analysis set forth in *Myrick v. James*, 444 A.2d 987 (Me.1982) to determine that the rule of *Ashby* should be applied only to those workers' compensation cases where the employee was injured on or after the date of that decision; (2) retroactive application of *Ashby* would impair the contract between Rust Engineering and Continental in violation of the United States and Maine Constitutions; and (3) the rights and responsibilities of the parties which vested at the time of Clark's injury on May 5, 1986 would be altered by the retroactive application of *Ashby*. We disagree.

■ We have recognized the general rule that a judicial holding applies to any case not terminated in a final manner. *Tuttle v. Raymond*, 494 A.2d 1353, 1363 (Me.1985); *MacDonald v. MacDonald*, 412 A.2d 71, 75 (Me.1980). We have previously limited the scope of the retrospective effect accorded a decision in a given case when that decision overruled a former rule created by this court. *See Myrick v. James*, 444 A.2d at 1001–02. In each instance, to arrive at our determination as to the temporal application of the decision, we assessed the existence of substantial public reliance on the former rule and of the litigants' ability to foresee our overruling decision. *Id.* Prior to our decision in *Ashby* we had not determined whether an employer's payments of specific dollar amounts per unit of time worked by an employee to various union-established funds for employee benefits pursuant to the terms of an employment agreement were included within the statutory definition of "average weekly wages, earnings or salary." *See* 39 M.R.S.A. § 2(2) (1989 & Supp.1990). In *Ashby,* unlike *Myrick* and the cases cited therein, *see Myrick*, 444 A.2d at 1001 n. 14, we were not confronted with the doctrine of *stare decisis*, and therefore we properly did not address the temporal application of the decision. In doing so at this time, we are guided by those factors heretofore considered by us in making that determination.

In the first instance, it is apparent that *Ashby* did not overrule past precedent established by this court. Although the precise factual situation had not previously been presented to us, our holding in *Ashby* rested squarely on language that had long been present in section 2(2). *Coffin v. Hannaford Brothers Co.*, 396 A.2d 1007 (Me.1979), established that what an employee is *entitled to receive* is determinative of the employee's earning capacity and must be reflected in calculating the "average weekly wages, earnings or salary" pursu-

---

**2.** Although *Ashby* addressed an earlier version of that definition, the subsequent amendment was not material to our analysis in these appeals.

ant to section 2(2). 396 A.2d at 1008–09. When this well-established principle was applied to the facts of *Ashby*, it was clear that the sums paid by the employer to the union were payments that the employer otherwise would have been obliged to make directly to the employee and were included within the statutory definition of the "average weekly wages, earnings or salary" of an employee.

We are not persuaded by the argument of Rust Engineering and Continental that because of their reliance on prior decisions of the Commission and the Appellate Division, as well as a rule adopted by the Bureau of Insurance excluding payments by an employer to group insurance or group pension plans for employees in fixing the premium base of insurance, they had little ability to foresee the *Ashby* decision. In the few cases where the issue was addressed, the decisions demonstrated the lack of consensus as between the individual commissioners as well as between the separate panels of the Appellate Division. As we noted in *Ashby*, two separate panels reached opposing results on the issue presented. 559 A.2d at 774. Nor is there anything in the rule adopted by the Bureau of Insurance indicating that it was based on an interpretation of section 2(2). To the contrary, in the present case Continental's expert witness testified that the rule from which the premium base for workers' compensation insurance is fixed is derived from a single national definition of an employer's payroll without regard either to the variations among the compensation statutes of the states or to their interpretations by the respective commissions or courts. Accordingly, we discern no reason to limit the temporal application of our decision in *Ashby*.

■ Rust Engineering and Continental also contend that a retroactive application of *Ashby* unconstitutionally would impair the obligations of their insurance contract. The contract clause of the Maine Constitution tracks the language of the cognate federal provision.[3] Accordingly, we give consideration to relevant decisions of the federal courts in determining this issue.[4] The Supreme Court has long held that the federal contract clause "is directed only against impairment by legislation and not by judgments of courts," *Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451, 44 S.Ct. 197, 199, 68 L.Ed. 382 (1924), and that it is only a statute and not the decisions interpreting it that can impair a contract. *Id.* at 453, 44 S.Ct. at 199. We stated in *Portland Sav. Bank v. Landry*, 372 A.2d 573, 575 (Me. 1977), that "[i]t is well settled that the law in effect at the time of the execution of a contract becomes part of that contract." Here, it is uncontroverted that section 2(2) predated the insurance contract entered into by Rust Engineering and Continental that provided coverage for Clark's injury. Neither section 2(2) nor our decision not to restrict the temporal application of *Ashby* impairs the obligations of the insurance contract between Rust Engineering and Continental.

■ We find no merit in the final contention of Rust Engineering and Continental. The rights of the parties that vested on the date of Clark's injury were controlled by section 2(2). *Ashby* did not change either the average weekly wages of Clark as defined by section 2(2) or the liability of Rust Engineering and Continental to compensate Clark for his injury in an amount based on Clark's average weekly wages.

3. The Maine Constitution provides that "[t]he Legislature shall pass no ... law impairing the obligation of contracts...." Me. Const. art. I, § 11. The United States Constitution provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10, cl. 8. *Cf. N.A. Burkitt, Inc. v. J.I. Case Co.*, 597 F.Supp. 1086, 1088–90 (D.Me. 1984) (comparing treatment of the two provisions).

4. In the present case, the statute was not enacted after the formation of the contract, and therefore we do not reach the analysis set forth in *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411–13, 103 S.Ct. 697, 704–06, 74 L.Ed.2d 569 (1983), for determination whether there is a statutory impairment of a contract obligation. *Director of Bureau of Labor Standards v. Fort Halifax Packing Co.*, 510 A.2d 1054, 1062 (Me.), *aff'd sub nom. Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1986).

## II

■ Kathy L. Dostie suffered a compensable injury on December 21, 1986, while employed by S.D. Warren Co. Dostie was a member of a union that negotiated the labor contract fixing her hourly wages and providing that the employer furnish disability, life and medical insurance. The employer also made statutorily required contributions for Dostie's social security insurance. Following our decision in *Ashby*, Dostie petitioned the Commission to fix her average weekly wages. The Commission held that her benefit package was a traditional fringe benefit arrangement clearly distinguishable from that in *Ashby* and denied Dostie's petition. The Appellate Division reversed the Commission's decision. From this decision S.D. Warren appeals, and Dostie cross-appeals.

S.D. Warren's primary contention is that the Appellate Division erred in expanding the definition of "average weekly wages, earnings and salary" to include benefits that did not meet the requirements set forth in *Ashby*. We agree. In *Ashby*, we specifically distinguished the benefits encompassed within the employment agreement in that case from those benefits that traditionally have been provided in other employment agreements. The employment agreement in *Ashby* committed the employer to a specific hourly rate of pay and an additional specific amount for each hour the employee worked, to be paid to the union for various union-established funds for employee benefits. The employees by union vote could alter the allocation to the various accounts and increase their take-home pay by decreasing the amount allocated to any account or increase the allocation to any account resulting in an automatic equivalent reduction in take-home pay. If the employer failed to make payments to the union-established accounts, those amounts could be recovered by the employee in an action for nonpayment of wages. *See Ashby*, 559 A.2d at 774–75. In summary, it was clear from the employment agreement that the sums paid to the union's benefit accounts were a specific amount per unit of time worked by the employee; the employer totally relin-

quished control over the funds "just as if they were delivered in the pay envelope," *id.* at 775, and the sums paid by the employer to the benefit accounts were monies that the employer otherwise would have been obliged to pay directly to the employee.

In this case the employment agreement did not provide that a specific sum per unit of time worked by Dostie be paid by the employer to an account that funded a specified benefit. There was no evidence that the sums paid by the employer for benefits for Dostie were payments that the employer otherwise would have been obligated to pay directly to Dostie or that if S.D. Warren failed to pay the necessary premiums for the maintenance of the benefits, Dostie could have recovered those amounts in an action for failure to pay wages. On the contrary, the evidence before the Commission was that the accident and sickness benefits and the life and medical insurance plans made available to the employees of S.D. Warren by the employment agreement were unilaterally established by S.D. Warren and fully funded by it with the premiums paid directly to the insurance company. The benefits were available to the employee without regard to the number of hours worked and continued up to two years after an employee's separation from the work force.

There is nothing in this record that demonstrates that the benefits provided under this employment agreement were not the traditional benefits provided under such an agreement. We hold that any value Dostie placed on such benefits does not fall within the statutory definition of "average weekly wages, earnings or salary" set forth in section 2(2).

## III

■ By her cross-appeal Dostie contends that because mandatory employer contributions to social security insurance have a specific dollar value per unit of time worked by the employee as required by *Ashby*, the Appellate Division erred in excluding the contributions from the compu-

tation of her average weekly wages. We disagree. She offers no authority in support of this contention, and we find none. Implicit in our analysis in *Ashby* is that the benefits at issue were contained in a bargained employment agreement. *Ashby,* 559 A.2d at 774. A contribution that an employee or bargaining unit has no power to exchange for cash compensation cannot be within the definition of an employee's earning capacity. Further, social security benefits are not vested, and they have no specific dollar value to Dostie per hour that she works. *See Munroe Regional Medical Center v. Ricker,* 489 So.2d 785, 788 (Fla. Dist.Ct.App.1986). We hold that there was no error in excluding S.D. Warren's contributions to the social security program from the computation of Dostie's average weekly wages.

Dostie also contends for the first time on appeal that the Commission incorrectly utilized a 52-week average when she only had received wages for 47 weeks. The record indicates that the Commission averaged Dostie's weekly wages over a period of 48 weeks, and Dostie has presented nothing to suggest that such a computation interval in her case was obvious error.

The entry is:

Judgment of the Appellate Division in *Kenneth Clark v. Rust Engineering Co., et al.* affirmed.

Judgment of the Appellate Division in *Kathy Dostie v. S.D. Warren Co.* is vacated. Remanded to the Appellate Division for entry of judgment affirming the decision of the Commission.

It is further ordered that the employer in *Kenneth Clark v. Rust Engineering Co., et al.* pay the employee $750 for attorney fees plus reasonable out-of-pocket expenses for this appeal.

All concurring.