## CARL GUNDERSON'S CASE.

Suffolk. September 5, 1996. - September 30, 1996.

Present: WILKINS, ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Workers' Compensation Act,* Average weekly wages, Compensation. *Words,*
  "Average weekly wages."

A reviewing board of the Department of Industrial Accidents correctly
  concluded that an injured employee who was receiving workers'
  compensation benefits was entitled to recalculation of his benefits based
  on a retroactive pay increase applicable to the period of injury resulting
  from the settlement of a labor dispute after the injury occurred, where
  G. L. c. 152, § 1 (1), does not expressly exclude consideration of such an
  increase in the determination of "average weekly wages." [643-646]

APPEAL from a decision of the Industrial Accident Review-
ing Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Thomas D. Burns* (*Edward J. Murphy, Jr., & Kevin G. Ken-
neally* with him) for the employer.

*Elizabeth N. Mulvey* for the employee.

GREANEY, J. We transferred this case from the Appeals
Court on our motion to decide whether a retroactive pay
increase adopted through collective bargaining arbitration
should enter into the calculation of the average weekly wages
of Carl Gunderson, an injured employee of the Massachusetts
Bay Transportation Authority (MBTA) who is receiving
workers' compensation benefits. The reviewing board (board)
of the Department of Industrial Accidents (department)
concluded that the employee should receive the benefit of the
retroactive pay increase. We agree and affirm the board's de-
cision.

Gunderson, the employee, had been a bus operator with
the MBTA since August 31, 1985, and was a member of Lo-
cal 589, Amalgamated Transit Union (union). The union

contract under which the employee was working expired on March 31, 1988, but union employees agreed to continue work until a new contract was signed.

On February 16, 1989, the employee was injured in an accident when the bus he was operating was struck by an automobile. The MBTA and the employee entered into an agreement for compensation for the payment of total disability benefits based on the employee's average weekly wages at the time of his injury. On July 18, 1989, an arbitrator's award terminated the labor dispute between the MBTA and the union. Under the award, members of the union received an increase of 6.6% in their wages, retroactive to April 1, 1988, which was the period during which the employees had been working without a contract.

On October 18, 1989, the employee filed a claim for increased benefits based on retroactive application of the new, higher hourly wage rate contained in the arbitrator's award. The claim was denied by the MBTA. A conference was held before an administrative judge of the department, who issued an interim order for payment of total incapacity benefits, based on the retroactive pay increase. However, after a subsequent hearing before the administrative judge, the employee's claim for increased benefits was denied. The employee filed an appeal with the board for review of the administrative judge's determination that the retroactive pay increase should not be included in the calculation of his average weekly wages. The board concluded that the employee was entitled to a recalculation of benefits based on the retroactive pay increase, and the MBTA appealed.

The MBTA argues that the board's decision should be reversed because the decision (1) fails to give the term "average weekly wages" its plain and ordinary meaning, (2) may result in inconsistent definitions of the term in applications of G. L. c. 152, and (3) creates uncertainty for the MBTA in determining appropriate payments of workers' compensation benefits. We do not agree.

As of February 16, 1989,[1] the date of the employee's injury, G. L. c. 152, § 1 (1) (1990 ed.), in pertinent part, defined "[a]verage weekly wages" as "the earnings of the injured em-

---

[1]General Laws c. 152 was extensively revised by the Legislature in 1991. St. 1991, c. 398, §§ 13-94, 111. We apply the provisions of the statute in effect on the date of the employee's injury.

ployee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two," and G. L. c. 152, § 34 (1990 ed.), set weekly compensation for total incapacity at "two-thirds of [the employee's] average weekly wage before the injury." The definition of "average weekly wages" in § 1 (1) does not expressly exclude a retroactive pay increase as a proper item for consideration in the calculation of wages. Unlike workers' compensation statutes in some other States, § 1 (1) does not define "average weekly wages" by any reference to the amount that the injured employee was *receiving* as compensation at the time of the injury.[2]

The definition of "average weekly wages" in § 1 (1) has been construed to give reasonable scope to ascertainable "earnings": in addition to ordinary salary, earnings have been held to include tips, *Powers's Case*, 275 Mass. 515, 520 (1931); commissions, *Perkins's Case*, 278 Mass. 294, 301-302 (1932); and room and board, *Palomba's Case*, 9 Mass. App. Ct. 881 (1980). This interpretive approach is used because our workers' compensation act "sets up a system of money payments for the loss of earning capacity sustained by an employee by reason of a work-connected injury." L. Locke, Workmen's Compensation § 301, at 344 (2d ed. 1981). See also *Sullivan's Case*, 218 Mass. 141, 142 (1914). One frequently cited treatise on workers' compensation law in this area has described the purpose of the earnings calculation as follows: "The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may

---

[2]For example, an earlier version of the Maine Workers' Compensation statute read as follows. "Average weekly wages, earnings or salary of an injured employee shall be taken as the amount which he was *receiving* at the time of the injury for the hours and days constituting a regular full working week . . ." (emphasis added). Me. Rev. St. Ann. tit. 39, § 2 (2)(A) (West 1978). Even an express statutory reference to "amount . . . receiv[ed]" did not dissuade the Supreme Judicial Court of Maine from holding that it was proper to include, in the computation of average weekly wages, a pay increase ratified after an employee's injury but made retroactive to a preinjury date. See *Coffin* v. *Hannaford Bros. Co.*, 396 A.2d 1007 (Me. 1979). The present definition of "average weekly wages" in the Maine statute is substantially similar to the earlier version quoted above. See Me. Rev. St. Ann. tit. 39-A, § 102 (4) (A) (West 1996).

sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis" (footnote omitted). 2 A. Larson, Workmen's Compensation § 60.11 (f), at 10-647—10-648 (1996).

In this case, the computation of the employee's average weekly wages should be based on the pay established by the new labor agreement because that agreement, by reason of its retroactivity provision, provides a clear measure of the employee's earning capacity. "The date on which wages are *paid*, therefore, must be distinguished from the date on which they are *earned*. The right to receive a retroactive wage increase vests when the work is performed not when the increase is ratified. See *Norwalk, City of & Firefighters, Local 830*, 58 Lab. Arb. 1281 (Conn. Bd. 1972). That the wages earned were paid only retroactively at a later date does not make them any less a part of the employee's earnings for that period. Similarly, that the contract establishing the revised wage scale was not ratified until after the injury does not deprive [the agreed upon wages] of their nature as compensation earned for work performed prior to the injury. See *Braniff Airways, Inc.*, 11 Lab. Arb. 77 (Broadwin 1948)." *Coffin* v. *Hannaford Bros. Co.*, 396 A.2d 1007, 1009 (Me. 1979). See *Tampa Elec. Co.* v. *Bradshaw*, 477 So. 2d 624, 627-628 (Fla. Dist. Ct. App. 1985) (injured employee entitled to benefit of retroactive pay increase). In the current field of public collective bargaining, a public employer like the MBTA should not be surprised by a retroactive pay provision, whether negotiated or imposed by arbitration, particularly as it relates back over a period when the employees agreed to work without a contract so that bargaining or arbitration may proceed and, accordingly, the employer should anticipate that some collateral consequences, such as the one applicable here, might follow from the new wage provision.

Contrary to assertions by the MBTA, nothing in this result either distorts the definition of "average weekly wages" or potentially creates any tension between G. L. c. 152, § 1 (1), and other provisions of G. L. c. 152, such as §§ 34 and 51.

The other assertion by the MBTA — that upholding the board will create uncertainty for the MBTA in the future — is based on *Gagnon's Case*, 228 Mass. 334 (1917). That case has no application because the uncertainty against which the *Gagnon* court cautioned arose from consideration of the employee's possible earnings from other jobs and sources, income which was not readily ascertainable by his employer. As the court stated: "[I]t would be a matter of utter uncertainty if the compensation to be paid should depend, not upon wages paid, but upon wages which the Industrial Accident Board after an injury may find upon independent evidence, perhaps not readily open to the employer during the period of employment, that the injured employee might have earned in some other employment or field of activity." *Id.* at 338. In this case, however, we are concerned with the employee's actual wages for the job he performed, as established by an employment contract.

The decision of the board is affirmed.

*So ordered.*