## Stephen T. Bradley's Case.

No. 00-P-345.

Suffolk. November 16, 2001. - November 4, 2002.

Present: Jacobs, Mason, & Kantrowitz, JJ.

*Workers' Compensation Act,* Incapacity, Amount of compensation, Right to compensation.

An administrative judge of the Department of Industrial Accidents correctly allowed continuation of a union employee's workers' compensation payments for partial disability under G. L. c. 152, § 35, during the period of a lockout of union employees. [360-361]

An administrative judge of the Department of Industrial Accidents, in determining workers' compensation benefits due a union employee who had been assigned light duty and was receiving partial incapacity benefits under G. L. c. 152, § 35, at the time his benefits were discontinued for the duration of a lockout of union employees, properly calculated benefits based on the effects of the partially disabled employee's physical injury on his earning capacity, rather than on a calculation of earnings lost as a result of the lockout. [361-366]

Appeal from a decision of the Industrial Accident Reviewing Board.

*Richard W. Jensen* for the insurer.

*John K. McGuire, Jr.,* for the employee.

Jacobs, J. Injured in 1993 while employed as a serviceman for a utility company, Stephen T. Bradley was assigned light duty as an office clerk and received workers' compensation payments for partial incapacity under G. L. c. 152, § 35, from the employer's self-insurer, Commonwealth Energy Systems (insurer). From March 31 through September 23, 1996, there was a lockout of union employees, including Bradley, a longtime

union member.[1] After Bradley began receiving unemployment compensation, the insurer, pursuant to the offset provision in G. L. c. 152, § 36B(2), applicable to workers receiving both partial disability benefits and unemployment compensation, discontinued its payments of disability benefits to him for the duration of the lockout.

An administrative judge of the Department of Industrial Accidents (DIA) issued a decision allowing Bradley's claim for workers' compensation during the lockout period. Following affirmance of that decision by a majority of the DIA reviewing board,[2] the insurer appealed to a single justice of this court, who reported the matter to a full panel.

The insurer argues it was error for the board to award Bradley disability benefits during the lockout because his loss of earnings was caused by the lockout and was not the result of his work-related injury. It also claims that the award was based on the judge's erroneous determination of the amount of Bradley's earning capacity during the lockout.

*The lockout.* The insurer's assertion that Bradley should not have received disability benefits during the lockout ignores an employee's right to compensation for a loss of earning capacity as a result of an industrial injury even though economic conditions may affect the availability of work. *Pierce's Case*, 325 Mass. 649, 656 (1950) ("if the actual wages received after the injury have been diminished by reason of economic conditions, the extent that they have been so lessened is to be disregarded in determining [the employee's] ability to earn subsequent to the accident"). As stated by a leading commentator, "[w]here the employee is claiming [workers'] compensation for total or partial incapacity after a period during which he was gainfully employed, it is immaterial whether the employee lost his job because of a layoff, strike, voluntary resignation, or business

---

[1]"Lockout" is defined as: "An employer's withholding of work and closing of a business because of a labor dispute." Black's Law Dictionary 951 (7th ed. 1999).

[2]This case has been reported at 13 Mass. Workers' Comp. Rep. 142 (1999). One member of the board dissented. The dissenting opinion takes the view that Bradley suffered an economic loss that was caused by the lockout, was unrelated to his injury, and was compensable only through unemployment benefits. The employer argues a similar view in this appeal.

recession. Whatever the reason for his predicament, he is entitled to compensation if he is totally or partially incapacitated from earning his former wage, by reason of the effects of his industrial injury." Locke, Workmen's Compensation § 325, at 385 (2d ed. 1981). Such a focus on compensation for injury-related loss of earning capacity is evident in older decisions such as *Septimo's Case,* 219 Mass. 430 (1914); *Johnson's Case,* 242 Mass. 489 (1922); and *Percival's Case,* 268 Mass. 50 (1929), in which employees returned to work after a compensable injury and thereafter lost their jobs due to economic conditions and which may be read as supporting the payment of workers' compensation benefits during layoffs. The board in its decision correctly treated the lockout in this case as analogous to a layoff. It stated: "As with a lockout, the termination of employment in a layoff is involuntary on the part of the employee and for reasons unrelated to his medical condition." It is consistent with the purpose of the workers' compensation statute that the employee's work-related incapacity be recognized regardless of the current status or availability of the job at which he suffered his injury, particularly where the work is unavailable due to circumstances beyond the control of the employee.

*The amount of benefits.* Because Bradley also received unemployment benefits during the lockout,[3] we consider the application of G. L. c. 152, § 36B,[4] which provides for the

---

[3] In pertinent part, G. L. c. 151A, § 25(*b*)(4), as appearing in St. 1993, c. 88, § 1, provides that "an employee shall not be denied [unemployment] benefits as the result of an employer's lockout . . . ."

[4] As relevant in the present case, G. L. c. 152, § 36B, inserted by St. 1985, c. 572, § 47A, provides: "(2) Any employee claiming or receiving benefits under section thirty-five who may be entitled to unemployment compensation benefits shall upon written request from the insurer apply for such benefits. Failure to do so within sixty days after written request shall constitute grounds for suspension of benefits under said section thirty-five. Any unemployment compensation benefits received shall be credited against partial disability benefits payable for the same time period, or, if for a period of time for which partial disability benefits have already been paid, shall be credited against any future partial disability benefits which are or may become payable."

As implicitly recognized by this offset provision, in the case of partial disability, there is no inconsistency in an employee being eligible to receive both workers' compensation and unemployment benefits. Any theoretical inequity

coordination of the two systems of benefits.[5] Partial disability benefits pursuant to G. L. c. 152, § 35, as appearing in St. 1991, c. 398, § 63, are based on a percentage of the "difference between [the employee's] average weekly wage before the injury and the weekly wage [the employee] is capable of earning after the injury."[6] The applicable postinjury wage capacity is designated as the "greatest" of the amounts computed under

in Bradley's being less burdened by the lockout than his fellow locked-out employees is a matter best left to the Legislature.

[5]A leading national commentator states: "Theoretically, the line between the two [systems] is plain: worker's compensation applies to wage loss attributable to physical disability, not to economic conditions: unemployment compensation applies to wage loss caused by economic conditions, not by physical disability . . . . At first glance the two [systems] may appear mutually exclusive; but the inconsistency disappears when the special meaning of disability in worker's compensation is remembered, involving . . . the possibility of some physical capacity for work which is thwarted by the inability to get a job for physical reasons." 4 Larson's Workers' Compensation Law § 84.05 (1999).

In Massachusetts, after the enactment of the employment security act in 1935 (G. L. c. 151A, inserted by St. 1935, c. 479, § 5), employees were limited by that act and its 1941 successor (St. 1941, c. 685, § 1) in obtaining unemployment compensation for the same time interval as that in which they received workers' compensation benefits. The 1935 act contained an exception for compensation based on partial disability, and the 1941 act contained an exception for benefits for injuries specified under G. L. c. 152, § 36, but not otherwise for benefits for partial disability. See the discussion in *Pierce's Case*, 325 Mass. 649, 654-655 (1950).

The Workers' Compensation Reform Act of 1985, St. 1985, c. 572, directly provides for the coordination of benefits under the two systems through G. L. c. 152, § 36B, inserted by St. 1985, c. 572, § 47A. The 1985 act also amended G. L. c. 151A, § 25(*d*), to allow payment of unemployment benefits where partial workers' compensation benefits are being paid. See St. 1985, c. 572, § 6A. See also Locke, Massachusetts Workers' Compensation Reform Act § 8.13 (Koziol Supp. 2000).

[6]Prior to his injury, Bradley had been paid an average weekly wage of $1,469. In his light-duty assignment he earned $930-$1,100 per week and received workers' compensation benefits averaging $252.08 per week, representing a statutory percentage of the actual net loss of his prior earnings. When the employer locked out union employees, Bradley's pay was terminated. He applied for, and received, $347 per week in unemployment compensation. When the provisions of G. L. c. 152, § 36B, were applied, the latter amount fully offset his disability benefits of $252.08. Pursuant to G. L. c. 152, § 8(2)(*k*), as appearing in St. 1991, c. 398, § 23, workers' compensation disability payments may be "suspended or reduced" in accordance with the offset provisions of § 36B.

the first four subsections of G. L. c. 152, § 35D.[7] See *Cassola's Case*, 54 Mass. App. Ct. 904, 905 & n.1 (2002). Because Bradley's actual earnings were terminated by the lockout and he was not capable of performing the job he held at the time of his injury,[8] §§ 35D(1) and 35D(2) are not applicable. The parties' dispute centers on the applicability of §§ 35D(3) and 35D(4).

The board agreed with the administrative judge's determination of the partial disability benefits due Bradley based on the judge's construction of G. L. c. 152, § 35D. Treating the lockout as a refusal to provide employment, the judge determined that Bradley's light-duty job was, in the meaning of § 35D(3) (see note 7, *supra*), not "available" to him[9] and correctly concluded

---

[7]Section 35D, as amended by St. 1991, c. 398, § 65, provides in relevant part: "For purposes of sections thirty-four, thirty-four A and thirty-five, the weekly wage the employee is capable of earning, if any, after the injury, shall be the greatest of the following: —

"(1) The actual earnings of the employee during each week.

"(2) The earnings that the employee is capable of earning in the job the employee held at the time of injury, provided, however, that such job has been made available to the employee and he is capable of performing it. . . .

"(3) The earnings the employee is capable of earning in a particular suitable job; provided, however, that such job has been made available to the employee and he is capable of performing it. . . .

"(4) The earnings that the employee is capable of earning.

"(5) . . . For purposes of this chapter, a suitable job or employment shall be any job that the employee is physically and mentally capable of performing, including light work, considering the nature and severity of the employee's injury, so long as such job bears a reasonable relationship to the employee's work experience, education, or training, either before or after the employee's injury. . . ."

[8]It is not disputed that at the times in issue Bradley was not capable of performing the job he held at the time of his injury. The administrative judge specifically concluded that Bradley could not have performed any other job than the light-duty work he had been doing before the lockout.

[9]The judge interpreted the language of § 35D(3), "such job has been made available," not as making that section applicable simply on the basis that the light-duty job had been available at some time in the past. He read the language rather as meaning that if the job was not available during the time period at issue, the section did not apply. That reading appears to be correct, given the language that follows, in the present tense, "and he is capable of performing it." We agree with and give deference to the board's reasoning that such an interpretation is harmonious with G. L. c. 152, § 8(2)(*d*)(ii), as appearing in St. 1991, c. 398, § 23, which provides that payment of benefits shall

that the provisions of § 35D(3) could not be applied, leaving § 35D(4) as the controlling provision. In construing § 35D(4), the judge determined that Bradley had been assigned a position based on labor contract provisions, which resulted in his being paid wages that "did not reflect the true market value of the work he was performing."[10]

After his injury, Bradley had been "medically retrogressed"[11] to an office position titled "customer service clerk-special." The duties of that position involved clerical work, including filing and handling telephone calls. The judge concluded that while this light-duty work was physically suitable for Bradley, his earnings of more than $23 per hour were based on his anomalous status under the employer's labor contract which resulted in his "continu[ing] to receive high wages even though he no longer was doing work that in itself merited a high wage level." Essentially the judge rejected the use of Bradley's actual earnings immediately before the lockout because they had been "artificially inflated." It is recognized that postinjury earnings may be an unreliable basis for determining earning capacity. See *Johnson's Case*, 242 Mass. at 492 ("abnormal conditions produced . . . by the great war . . . . enabled the employee to avoid an impairment of earning capacity which otherwise the physical injury would inevitably have caused"). See also 4 Larson's Workers' Compensation Law § 81.01[4] (1999).

The judge noted that clerks with length of service equivalent to that of Bradley were paid $15.63 per hour. He also found that Bradley had no training in the use of computers, did not

---

not be discontinued or modified except where a "suitable job is open and has been made available, and remains open to the employee . . . ." Contrary to the insurer's assertion that these two sections contain different language which should be given different meanings, the result reached by the judge and the board is consistent with the statutory interpretation principles expressed in *Meunier's Case*, 319 Mass. 421, 423 (1946).

[10]There is no merit in the employer's assertion, relying on an aspect of the process for determination of wage rates for public works contracts, see *Construction Indus. of Massachusetts* v. *Commissioner of Labor & Indus.*, 406 Mass. 162, 172 (1989), that the wages paid Bradley under the labor agreement were the proper basis for determining market wages.

[11]The record does not provide a definition for this term. It appears to be used in the employer's labor agreement to signify the situation here — that is, placement in light-duty work after an employee is injured.

use one in his light-duty job, and had no typing, shorthand, or special office skills.[12] Therefore, in accordance with § 35D(4), he determined the weekly wage "that the employee is capable of earning" and, based on his assessment of Bradley's training, work experience, capabilities, pain, and physical limitations, see *Mulcahey's Case*, 26 Mass. App. Ct. 1, 3 (1988), assigned Bradley an earning capacity of $240 per week. Accordingly, the judge ordered payment of partial disability benefits of $407.48 per week,[13] and also ordered that the insurer may take credit for unemployment benefits pursuant to the offset provision of G. L. c. 152, § 36B(2).

*Conclusion.* The judge's calculation of the workers' compensation benefits due Bradley properly was based on the effects of Bradley's physical injury on his earning capacity and, contrary

---

[12]The board also stated that the wages were "in the nature of a gratuity," although they were based on contractual provisions. Our record does not contain any of the provisions of the collective bargaining agreement. We note that G. L. c. 152, § 10C(1)(*a*) and (*e*), inserted by St. 1991, c. 398, § 29, provide that benefits supplemental to those in §§ 34, 34A, 35, and 36, and the creation of light-duty or modified jobs may be included in the scope of collective bargaining agreements. In this decision it is not necessary to determine the precise basis for the wages paid Bradley because whether they can be characterized as actual earnings for light-duty work or as a "gratuity," compare *Bradley's Case*, 46 Mass. App. Ct. 651, 654-656 (1999), his light-duty job was no longer available during the lockout. Not presented in this case is any issue of whether or how Bradley's disability benefits are to be recalculated upon his return to work after the lockout.

[13]Pursuant to G. L. c. 152, § 35, as appearing in St. 1991, c. 398, § 63, partial incapacity benefits shall be a "weekly compensation equal to sixty percent of the difference between [the employee's] average weekly wage before the injury and the weekly wage [the employee] is capable of earning after the injury, but not more than seventy-five percent of what such employee would receive if he or she were eligible for total incapacity benefits under section thirty-four." In this case, the computation, sixty percent of ($1469-$240), yields $737.40, a result that exceeds the amount allowable under § 34. That amount, known as the State average weekly wage, promulgated annually by the division of employment and training, see G. L. c. 152, § 1(9), and G. L. c. 151A, § 29, and applicable to the date of Bradley's injury in 1993, is $543.30 (see DIA unnumbered form "Maximum Compensation Rate — State Average Weekly Wage (SAWW)," Locke, Massachusetts Workers' Compensation Reform Act, App. J at 874-875 [Koziol Supp. 2000]). The judge's award, therefore, could not exceed seventy-five percent of that amount, or $407.48. Application of the credit for unemployment benefits pursuant to G. L. c. 152, § 36B(2) — $347 — reduces the employer's payment of partial disability benefits to $60.48 per week.

to the insurer's assertion, not on a calculation of earnings lost as the result of the lockout. We conclude that the board did not err in deciding that the administrative judge had properly applied the relevant statutory provisions, and that the board's decision is "factually warranted . . . disclosing reasoned decision making within the particular requirements governing a workers' compensation dispute." *Scheffler's Case*, 419 Mass. 251, 258 (1994).[14]

> *Decision of the reviewing board*
> *of the Department of Indus-*
> *trial Accidents affirmed.*

---

[14]In light of our decision, we reject the employer's request that we reverse the board's denial of its claim for costs pursuant to G. L. c. 152, § 14(1).