Lauriat, J.
INTRODUCTION
Robert H. Locke (“Locke”) commenced this action against defendants, W.R. Grace & Co.-Conn. (“Grace”) and Robert J. Bettacchi (“Bettacchi”) (“the defendants”), alleging that he was wrongfully constructively terminated because of his age and perceived disability. The defendants have now moved for summary judgment. For the reasons set forth below, the defendants’ motion is allowed as to Count I and Count III (age discrimination) and is denied as to Count II and Count IV (handicap discrimination).
BACKGROUND
Locke worked for Grace Construction Products (“Grace Construction”), a subsidiary of Grace, for over twenty years, during which he held various business and management positions. At the time of the events that gave rise to Locke’s complaint, he was the Vice President and Chief Technical Officer (“CTO”) of Grace Construction. Locke held the position of CTO from 1992 through June 1998 and reported directly to Bettacchi, who was President of Grace Construction.
In 1997, Grace shut down its corporate research facility located in Columbia, Maryland (“the Columbia facility”). The shutdown of the Columbia facility resulted in the transfer of many of the research functions performed there to Grace Construction in Massachusetts. As CTO of Grace Construction, Locke also became responsible for the oversight of the new research functions transferred from the Columbia facility.
Also in late 1997, Grace sold Cryovac, one of its major business divisions. The sale of Cryovac increased the importance of Grace Construction’s contributions to Grace. In 1998, Grace Construction was accountable for V3 of Grace’s sales and revenues.
In June 1998, Bettacchi opted to eliminate the position of CTO and to replace it with two separate positions: Vice President of Research and Development; and Vice President of New Business Development. The defendants allege that their decision to “split” the CTO position was due to the changes that occurred in 1997 (the closing of the Columbia facility and the sale of Cryovac), and to the company’s intent to grow and focus more on the research and development aspects of its business. Bettacchi offered Locke the position of Vice President of New Business Development. The offer was accompanied by a “warning”— *510 the position would expose Locke to more stress than that which he had experienced as CTO.
The Vice President of New Business Development position offered the same salary as the CTO position but with a decrease of one salary grade (22 to 21). The one-grade decrease would diminish possible future salary increases, discretionary bonuses and stock options. The defendants did not give additional offers or other job options to Locke. Locke declined the defendants’ offer and left Grace Construction; he was 58 at the time. In October 1998, Dr. Felek Jachimowicz (“Jachimowicz”), who was then 51 years old, was appointed as Vice President of Research and Development; at the time, his salary grade level was 22. The position offered to Locke remained vacant and under Bettacchi’s supervision until mid-1999, when it was given to Anna Marie Kersten (“Kersten”) at a grade level of 21. Kersten, who at the time was in her early forties, had been working with another company in various areas including new business development.
During his tenure at Grace, Locke requested and obtained two medical leaves of absence. The first medical leave of absence was in 1994 and lasted 5 weeks. The second one was in 1998 and lasted approximately one month. Both medical leaves were upon the recommendation of Locke’s physician, and they were both due to Locke’s inability to function in the workplace because of anxiety and depression. After returning from his medical leave in 1998, Locke requested, per his physician’s instructions, to be introduced gradually back into his work.
DISCUSSION
Locke’s complaint asserts two counts of age discrimination and two counts of handicap discrimination against the defendants under G.L.c. 151B. His theory is that the elimination of the CTO position was the defendants’ way to terminate him without being exposed to liability. Locke asserts that his age, 58, as well as his two medical leaves of absence, were the motivating factors for the defendants’ actions. The defendants have moved for summary judgment on all counts of Locke’s complaint.
I.
When evaluating a summary judgment motion, the court looks at the evidence in the light most favorable to the non-moving party. See Mass.R.Civ.P. 56(c). Summary judgment is appropriate when the moving party shows that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Flesner v. Technical Communications Corp., 410 Mass. 805, 808-09 (1991) (citing to Madsen v. Erwin, 395 Mass. 715, 719 (1985)). The moving party may satisfy its burden by “demonstrating that proof of [an essential element of plaintiffs case] is unlikely to be forthcoming at trial.” Flesner, 410 Mass, at 805. If there are genuine issues of material facts, the summary judgment motion must be denied. Conversely, if the plaintiff is unable to present sufficient evidence to establish all elements of his claims, summary judgment must be granted. There are three stages of proof in presenting an employment discrimination claim under G.L.c. 151B. In Stage I, the plaintiff must present, by a preponderance of the evidence, a prima facie case of discrimination. Tardanico v. Aetna Life & Casualty Company, 41 Mass.App.Ct. 443, 447 (1996). Stage II requires that the defendant provide a legitimate, non-discriminatory reason for its actions. Id. The defendant’s burden in Stage II is one of production, since the burden of persuasion always lies with the plaintiff. Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130, 139 (1976); Loeb v. Textron, Inc., 600 F.2d 103, 111 (1st Cir. 1979). Finally, Stage III requires that the plaintiff prove that the defendant’s articulated reason is a pretext for the real and unlawful motive. Id. Pretext may be established by circumstantial evidence. Blare v. Husky IryectionMolding Sys. Boston, Inc., 419 Mass. 437, 445 (1995).
II. Age Discrimination (Counts I and III)
To establish a prima facie case of age discrimination, the plaintiff must show that: (1) he was over 40 years old; (2) he was qualified for the position; (3) he was terminated; and (4) the position was filled with someone with similar qualifications who was younger. Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000). Failure to establish all elements of the prima facie case would result in the granting of summaiy judgment for the defendants. The question of “whether a plaintiff has proffered evidence sufficient to establish a prima facie case is a question of law and depends on the specific facts of a case.” Knight v. Avon Products, Inc., 438 Mass. 413, 424 (2003).
In the present case, the evidence is undisputed as to three elements of Locke’s required prima facie case — he was 58, hence, a member of the protected class under c. 151B; by Bettacchi’s own admission, Locke was qualified for the position at issue; and his replacement, although also a member of the protected class under c. 15 IB, was younger than him. See Knight, 438 Mass, at 425 (5-year difference is sufficient to support a prima case of age discrimination). See also O’Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (“The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of age”). Moreover, the evidence shows that the difference in qualifications between Locke and Dr. Jachimowicz was irrelevant since, by Bettacchi’s own admission, the decision not to give the position of Vice President of Research and Development to Locke was not based on his lack of qualifications. See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129 (1997) (the difference in qualifications must be tied to the position at issue).
*511 Thus, the element of “termination” is Locke’s main hurdle. He asserts that his resignation amounted to a constructive discharge because the defendants’ actions forced him to resign. Locke argues that a pattern of harassment is established, such that a jury could infer that he was forced to resign, by the decrease in number of people reporting to him, the decrease in the budget provided to the new business development department, and Bettacchi’s warning that the position being offered to him would expose him to more stress. However, looking at this evidence in the light most favorable to the plaintiff, the court concludes that it is insufficient to establish the element of termination.
Unlike Calhoun v. Acme Cleveland Corp., 798 F.2d 559 (1st Cir. 1986), upon which Locke relies, the defendants in this case did not continuously ask him whether he was retiring, the CTO position was not given to someone else, he was not demoted, and he was not threatened with having to work an additional 27 hours a week in the position he was offered. 798 F.2d 559 at 563 (the combination of repeated inquiries of whether plaintiff wanted to retire, demotion of plaintiff, promotion of younger person to replace plaintiff and threat of onerous working hours in the absence of resignation amounted to a constructive discharge). Here, the reduction in the number of employees reporting to the Vice President of New Business Development and the decrease in the department’s budget was logically due to the separation of the new business and the research and development departments. Therefore, the only arguable evidence of constructive discharge is Bettacchi’s warning that Locke would be exposed to a higher level of stress as the Vice President of New Business Development. This is not sufficient to establish the element of termination even in combination with the other events. Since Locke is unable to establish all of the elements of his age discrimination claims, Stage I is not met and the defendants are entitled to summary judgment in their favor on these claims.
Even assuming, aguendo, that Locke could establish a prima facie case of age discrimination, his claims would nonetheless fail at Stage III. The record before the court supports the conclusion that the defendants have met their burden of production as required by Stage II. The defendants have presented evidence that during 1997, the company underwent significant changes, e.g., the sale of Cryovac, a major business division, and the closing down of the Columbia facility and its merger with Grace Construction. Although Locke correctly asserts that the defendants always carried a message of growth, the defendants have produced sufficient evidence to support their articulated reason for dissolving the CTO position and making it two different positions. Also, even though it is not controlling, there is evidence in the record that the CTO position was never reinstated once the plaintiff left, the positions of Vice President of New Business Development and the Vice President of Research and Development are separate and held by different people, and the new business development department remained small and has a minimal budget.
As a result, to survive summary judgment, Locke must establish that the reasons articulated by the defendants (growth and change of the business’s needs) were a pretext — meaning that he must show that the defendants’ dissolution of the CTO position was motivated by Locke’s age. To establish pretext, Locke relies on the fact that five senior executives (all in their 50s and 60s) left Grace during a period of 3 years. He suggests that these executives were forced out of their jobs by Grace because of their age. However, the summary judgment record shows that four of the five executives voluntarily left the company. The reasons for their departure range from a desire to retire, to a dislike of the company’s new direction, to a diagnosis of terminal cancer and a decision to spend the rest of his life with family. In addition, there is evidence that two of these individuals continue to consult for Grace. In fact, there is only evidence that one of these executives thought that his age and health played a part in his termination; however, he did admit that there were numerous discussions as to the reorganization in his area prior to his having medical problems and that he understood at all times that the reorganization would result in the elimination of his job position. Thus, even though all of these executives were in a protected class pursuant to c. 15 IB, the evidence presented does not support the argument that they were forced out by the defendants because of their age.
In addition, there is no evidence in this case as to any remarks concerning the plaintiffs age and the change in the CTO position. See Wooster v. Abdow Corporation, 46 Mass.App.Ct. 655, 672-73 (1999) (summary judgment as to age discrimination claim granted where plaintiff failed to establish a link between the defendant’s actions and his age). Absent a link between the nondiscriminatory reason articulated by the defendants and the plaintiffs age, the court is bound to grant the defendants’ motion for summary judgment as to his age discrimination claims. See Wooster, 46 Mass.App.Ct. at 673 (summary judgment appropriate because the plaintiff has no reasonable expectation of establishing a link between his age and his termination).
III. Handicap Discrimination (Counts II and IV)
To establish a claim of discrimination based on a handicap, the plaintiff must show that he is handicapped; that with or without reasonable accommodation he could have performed his job; and that his employer fired him in whole or in part because of his handicap. Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 7 (1998). A plaintiff may sustain a *512 claim of discrimination based on a perceived handicap regardless of whether he/she is handicapped as defined by the statute. See Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 16-17 (juiy could have inferred that the plaintiff was terminated because of his perceived handicap); Katz v. City Metal Co., Inc., 87 F.3d 26 (1st Cir. 1996) (plaintiff presented evidence of employer’s knowledge of his medical problems and limitations, giving the juiy sufficient evidence to conclude that the employer perceived him as handicapped).
In the present case, the summaiy judgment record reflects that the defendants were aware that Locke had problems handling stress; that Locke requested to be gradually introduced back to work after his 1998 medical leave of absence; that the defendants’ warning as to the increase of stress relative to the new position was motivated by the defendants’ knowledge of plaintiffs stress problems; and the increased stress warning was illogical since Locke would be handling a significantly smaller department which was less important to the corporation. On this summaiy judgment record, it is clear that there is a genuine issue of material fact as to whether the defendants’ actions were based on or motivated by their perception that Locke was handicapped. See Katz, 87 F.3d at 32-34 (plaintiff established a prima facie case of handicap discrimination by presenting evidence of defendants’ knowledge of plaintiffs health problems, plaintiffs request to reduce work load and timing of plaintiffs firing). Accordingly, the defendants’ motion for summary judgment on these claims must be denied.
ORDER
For the foregoing reasons, the Defendants’ Motion for Summaiy Judgment is ALLOWED as to Counts I and III of the plaintiffs Complaint, and DENIED as to Counts II and IV of the plaintiffs Complaint.