STEVEN MIKE'S CASE.

No. 07-P-1837.

Suffolk. June 20, 2008. - October 28, 2008.

Present: CYPHER, COHEN, & FECTEAU, JJ.

*Department of Industrial Accidents. Workers' Compensation Act,* Decision of
Industrial Accident Reviewing Board, Average weekly wages.

The plain and ordinary meaning of the unemployment insurance law and the
relevant workers' compensation statutes confirmed that the reviewing
board of the Department of Industrial Accidents properly excluded
unemployment benefits, G. L. c. 151A, § 1(r)(2), received by the employee
from the computation of his average weekly wages pursuant to G. L.
c. 152, § 1(1), in determining his workers' compensation benefits under
G. L. c. 152, § 34. [45-49]

APPEAL from a decision of the Industrial Accident Reviewing
Board.

*Charles E. Berg* for the employee.

*Nicole M. Edmonds* for the insurer.

CYPHER, J. This appeal presents the question whether the
reviewing board of the Department of Industrial Accidents
(reviewing board) erred in excluding unemployment compensa-
tion benefits, G. L. c. 151A, § 1(r)(2), received by the employee,
Steven Mike, from the computation of his average weekly wages
pursuant to G. L. c. 152, § 1(1), in determining his workers'
compensation benefits under G. L. c. 152, § 34.

The employee was injured in the course of his employment
with Zebra Striping and Sealcoat Co., on July 30, 2005. He re-
ceived temporary total incapacity workers' compensation benefits
from the insurer from that date through October 4, 2005. The
employee had been employed on a seasonal basis from 1992
through 2004 as a line stripe painter of highways and parking
lots. He typically applied for, and received, unemployment benefits
during the winter months. Before his injury, he was employed

from April 1, 2004, to November 29, 2004, and then received unemployment benefits until resuming work in April, 2005. He sought to have the amount of unemployment benefits received during the one year prior to the date of his injury included in the calculation of his average weekly wages in determining the amount of his workers' compensation award.

On November 22, 2006, an administrative judge denied the employee's request to include his unemployment benefits in computing his average weekly wages. On October 17, 2007, the reviewing board affirmed, ruling that long-standing principles do not permit unemployment benefits to be included as previous "earnings" of the injured employee.

On appeal, the employee argues that G. L. c. 152 does not specifically exclude unemployment benefits as previous earnings and advances several arguments to support the proposition that such benefits ought to be considered earnings in computing his average weekly wages.

*Discussion.* Workers' compensation under G. L. c. 152, § 34, is based on the injured employee's average weekly wages prior to the injury. "Average weekly wages" are defined in G. L. c. 152, § 1(1), as appearing in St. 1943, c. 529, as the "earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two."[1] Here, because the employee's work was seasonal and because his injury occurred near the beginning of his work season, computing his average weekly wages over the period of the preceding twelve calendar months necessarily would result in lower average weekly wages if his unemployment benefits are excluded from the calculation.[2]

The sections of the workers' compensation statutes in issue in this case do not refer to unemployment compensation. There is no Massachusetts appellate authority that directly addresses the question whether unemployment benefits should be included in

[1]The provision continues "but if the injured employee lost more than two weeks' time during such period, the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted."

[2]The employee's G. L. c. 152, § 34, award was $183.76 per week, based on his usual pay of $299.21 per week. By including his unemployment compensation, the employee sought $399.21 per week.

the computation of average weekly wages under G. L. c. 152, § 1(1), although as we discuss, *infra*, the reviewing board has previously considered the issue. Because both the workers' compensation and the unemployment compensation statutes have extensive histories, we look to that background to determine whether and how the two systems of benefits may intersect. As explained in a leading treatise:

> "Although often a worker may be out of work in circumstances which would entitle him to benefits under the workers' compensation act and the employment security act [G. L. c. 151A], until the 1985 Reform Act there was no provision dealing with coordination of benefits in the workers' compensation act. Provisions in the employment security act were construed to bar compensation for the same period during which the claimant had received unemployment benefits." (Footnotes omitted.)

Nason, Koziol & Wall, Workers' Compensation § 18.27 at 98 (3d ed. 2003).

In providing for the coordination of benefits between both systems in the 1985 Reform Act, the Legislature added c. 152, § 36B,[3] and also amended § 25(*d*) of the unemployment insurance law, G. L. c. 151A.[4] It is clear that the long-standing prohibition against the simultaneous receipt of unemployment benefits and workers' compensation benefits was explicitly set forth in

---

[3] General Laws c. 152, § 36B, inserted by St. 1985, c. 572, § 47A, provides:

"(1) No benefits shall be payable under section thirty-four or section thirty-four A for any week in which the employee has received or is receiving unemployment compensation benefits.

"(2) Any employee claiming or receiving benefits under section thirty-five [for partial incapacity] who may be entitled to unemployment compensation benefits shall upon written request from the insurer apply for such benefits. Failure to do so within sixty days after written request shall constitute grounds for suspension of benefits under said section thirty-five. Any unemployment compensation benefits received shall be credited against partial disability benefits payable for the same time period, or, if for a period of time for which partial disability benefits have already been paid, shall be credited against any future partial disability benefits which are or may become payable."

[4] General Laws c. 151A, § 25, as amended through St. 1985, c. 572, § 6A,

both statutes and is subject only to a narrow exception not relevant here.[5]

We now turn to consideration of the computation of the employee's average weekly wages in conjunction with his seasonal employment and receipt of unemployment benefits. Our review takes place in the context of "grant[ing] substantial deference to the reviewing board's interpretation of G. L. c. 152." *McCarty's Case*, 445 Mass. 361, 366-367 (2005). The reviewing board in this case observed that *Bunnell* v. *Wequasset Inn*, 12 Mass. Workers' Comp. Rptr. 152, 155 (1998), "provides the foundation for the analysis of unemployment benefits paid during the off-season in this case." In *Bunnell*, the average weekly wages for a seasonally employed worker were determined not to include "off season time," which was not "within the employment relationship and therefore could not be 'time lost' from the employment," as required for a divisor of fewer than fifty-two weeks pursuant to G. L. c. 152, § 1(1).[6] See note 1, *supra*. The reviewing board in *Bunnell* v. *Wequasset Inn, supra*, distinguished *Bartoni's Case*, 225 Mass. 349, 352 (1916), where time was lost by the employee, a granite worker, because of inclement weather. The reviewing board concluded that the employee in *Bartoni's Case* "might have worked but was prevented," and the time lost was properly excluded, so that the average weekly wages were calculated as total wages received divided by the actual number of weeks worked, rather than fifty-two weeks. See *Herbst's Case*, 416 Mass. 648, 650 (1993) (teacher's summer vacation period not

---

provides that "no benefits shall be paid to an individual under this chapter for —

"(*d*) Any period with respect to which [the individual] is receiving or has received or is about to receive compensation for total disability under the workers' compensation law of any state . . . , but not including payments for certain specified injuries under section thirty-six of chapter one hundred and fifty-two . . . ."

[5]General Laws c. 152, § 36B (2), provides that if unemployment compensation is received while an employee is receiving workers' compensation benefits for partial incapacity, the unemployment compensation must be credited against the partial disability benefits. Thus, even under this exception, there can be no overlapping of the benefits received.

[6]The employee in this case does not contend that the number of weeks used in computing his average weekly wages should be fewer than fifty-two.

"time lost" because the teacher "was not prevented from working").[7]

The reviewing board's decision here was in the context that the employee was not entitled to a deduction for time lost where the off-season time was not part of the employment relationship and therefore was not time lost within the meaning of G. L. c. 152, § 1(1). Instead, the time when the employee did not work was the result of the cyclical nature of the work, and the employee was free to seek other employment.[8]

In this context, we consider the employee's assertion that because unemployment compensation is not expressly excluded from G. L. c. 152, § 1(1),[9] that compensation may be treated as earnings and should be included in the computation of his average weekly wages. There is no merit in the employee's attempt to analogize unemployment benefits to earnings. "The average weekly wages is throughout [c. 152] ascertainable only by reference to the wages actually paid at the expense of the industry at which the employee is working. Save in carefully specified exceptions, it is to be ascertained only by reference to the wages paid by the particular employer to the injured employee." *Gagnon's Case*, 228 Mass. 334, 337 (1917). See *Borofsky's Case*, 411 Mass. 379 (1991).

The employee similarly asserts that unemployment benefits are closely analogous to wages and that he used those benefits as substitute earnings. The employee's characterizations do not change the fundamental nature of unemployment benefits. These benefits are provided under G. L. c. 151A, a different statute with a different purpose from G. L. c. 152.[10] "Our workers' com-

---

[7]"The treatment of seasonal employment is not subject to the 'lost time' exclusion in [c. 152,] § 1(1)[,] because the off season time cannot be 'considered within the employment relationship.' " Nason, Koziol & Wall, Workers' Compensation § 18.3 at 12 (3d ed. 2003), quoting from *Bunnell* v. *Wequasset Inn, supra.*

[8]There is nothing in the record in this case indicating that the employee's off season was not the result of his usual work cycle, or that he sought other employment and was unable to find it.

[9]The section specifically excludes "such fringe benefits as health insurance plans, pensions, day care, or education and training programs provided by employers" from the calculation of average weekly wages. G. L. c. 152, § 1(1), inserted by St. 1991, c. 398, § 13.

[10]This court previously observed that:

" 'Theoretically, the line between the two [systems] is plain: worker's

pensation act explicitly states that '[e]xcept as expressly provided elsewhere in this chapter, no savings or insurance of the injured employee *independent of this chapter* shall be considered in determining compensation payable thereunder, nor shall benefits derived from any other source than the insurer be considered in such determination' (emphasis supplied). G. L. c. 152, § 38." *Louis's Case*, 424 Mass. 136, 141 n.7 (1997). Here, the unemployment insurance benefits are clearly "benefits" paid from a different source.

The reviewing board in the case before us noted that it had previously decided this issue in *Defelice* v. *Derbes Bros., Inc.*, 16 Mass. Workers' Comp. Rptr. 422, 424 (2002). We defer to and agree with its conclusion both in this case and in *Defelice* that unemployment benefits cannot be used in determining compensation under G. L. c. 152, because "although a form of 'substitute earnings,' they are simply not 'created' and 'contemplated' by G. L. c. 152." *Ibid.*, quoting from *Louis's Case*, *supra*. Moreover, the reviewing board in *Defelice* properly relied on the principle expressed in *Pierce's Case*, 325 Mass. 649, 658 (1950): "Both [unemployment] benefits and [workers'] compensation are charges on industry, but, with the exception covering specific injuries under c. 152, § 36, as amended, it was not intended that industry should be saddled with the double burden of paying benefits and compensation during the same period in which an employee is not earning wages." See G. L. c. 152, § 36B(1), at note 3, *supra*.

Contrary to the employee's assertions, no ambiguity or doubt concerning the Legislature's intent exists in view of the clarity of the statutes construed according to their plain and ordinary meaning. *Taylor's Case*, 44 Mass. App. Ct. 495, 499-500 (1998), and cases cited.

> *Decision of reviewing board*
> *affirmed.*

---

compensation applies to wage loss attributable to physical disability, not to economic conditions: unemployment compensation applies to wage loss caused by economic conditions, not by physical disability.' " *Bradley's Case*, 56 Mass. App. Ct. 359, 362 n.5 (2002), quoting from 4 Larson's Workers' Compensation Law § 84.05 (1999).