ETHEL POWERS'S CASE.

Suffolk.   November 14, 1930. — June 1, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act,* Amount of compensation. *Tips. Words,* "Average weekly wages."

Findings by the Industrial Accident Board upon a claim by a waitress in a restaurant for compensation under the workmen's compensation act, that her contract of hire with the subscriber specified that she was to receive $8 per week and was to be allowed to retain for herself whatever tips should be given her by the patrons of her employer's restaurant and that those tips averaged $12 a week, warranted a further finding and ruling that the tips constituted a part of her average weekly wages and that her average weekly wages under the provisions of the act were $20.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board, described in the opinion.

In the Superior Court, by order of *Dillon,* J., a final de-

cree was entered awarding less compensation than was awarded by the board. The employee appealed.

The case was argued at the bar in November, 1930, before *Rugg*, C.J., *Pierce, Carroll, Wait, & Field*, JJ., and afterwards was submitted on briefs to all the Justices.

*S. B. Horovitz*, for the claimant.

*J. F. Cavanagh*, (*W. G. Wehrle* with him,) for the insurer.

RUGG, C.J. The only question in this case is the average weekly wages of the injured employee under the workmen's compensation act. She was a waitress in a restaurant. The findings of the member were that her contract of hire with the subscriber specified that she was to receive $8 per week and was to be allowed to retain for herself whatever tips should be given her by the patrons of her employer's restaurant and that those tips averaged $12 a week. The board affirmed and adopted these findings, except that it found and ruled that the tips constituted a part of her average weekly wages and that her average weekly wages under the act were $20. It has not been argued that the findings of the board were not warranted by the evidence so far as they were findings of fact. To that extent they must be accepted as true. *Pass's Case*, 232 Mass. 515. In the Superior Court a decree was entered in favor of the employee on the basis of an average weekly wage of $8. The appeal of the employee brings the case here.

The precise point for decision is whether tips received by the employee in these circumstances rightly may be found to be a part of her average weekly wages. It is a new point in this court. See *Sensk's Case*, 247 Mass. 232, 235. The term "Average weekly wages" is defined in G. L. c. 152, § 1 (1) to be "the earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury." This definition adopts the word "earnings" which is the dominant word of the English act. St. 6 Edward VII, c. 58, First Schedule (2) (*a*). Such identity cannot be treated as without significance. *McNicol's Case*, 215 Mass. 497, 499. There are differences between the English act and the Massachusetts act, as has

been pointed out in *Gove's Case,* 223 Mass. 187, 192–194, and *Bartoni's Case,* 225 Mass. 349, 351. The word "earnings" under the English act had been interpreted before the passage of our own act to include "tips." *Penn v. Spiers & Pond, Ltd.* [1908] 1 K. B. 766. *Great Northern Railway v. Dawson,* [1905] 1 K. B. 331. *Knott v. Tingle Jacobs & Co.* 4 B. W. C. C. 55. See *Skailes v. Blue Anchor Line, Ltd.* [1911] 1 K. B. 360, 365, 373, 375. There are few American decisions pertinent to this point. It has arisen in New York. It there has been held that tips received by a taxicab driver and by a Pullman porter to the knowledge of the employer are to be included in ascertaining average weekly wages as the basis of compensation. In the first of the cases about to be cited an effort was made to distinguish the English cases because the language of the English act based compensation on "earnings" while the New York act used the word "wages" in several places. The court analyzed the New York act and reached the conclusion that the two words were used in it in such way as to indicate synonymous meaning. *Sloat v. Rochester Taxicab Co.* 177 App. Div. (N. Y.) 57, affirmed without opinion in 221 N. Y. 491. *Bryant v. Pullman Co.* 188 App. Div. (N. Y.) 311, affirmed without opinion in 228 N. Y. 579; certiorari granted in *Pullman Co. v. State Industrial Commission,* 254 U. S. 624, and then dismissed per stipulation, 254 U. S. 666. In *Begendorf v. Swift & Co. Inc.* 193 App. Div. (N. Y.) 404, it was held that tips given to a truck driver employed to deliver meat for a corporate employer engaged in the meat business could not be considered if received without the knowledge of the employer.

It is to be noted that there is no insurance requirement under the English act. It merely substitutes in certain cases workmen's compensation for common law liability but to be enforced in the same way. Under the Laws of New York (1913) c. 816, art. 3, § 50, there are three courses open to the employer: (1) he need not insure at all if he satisfies the public board that he is able to pay probable losses without insurance. Employers of such solvency appear to stand on the same footing as employers under the

English act; (2) he may insure under the State fund; (3) he may insure with an insurance company.

The differences between our act requiring compulsory insurance by all employers who become subscribers, on the one side, and the English and, in lesser degree, New York acts, on the other side, while significant, are not of decisive consequence in this connection. The California act is somewhat different from ours but it was held in *Hartford Accident & Indemnity Co.* v. *Industrial Accident Commission,* 41 Cal. App. 543, that the inclusion of tips in earnings was proper under the terms of that act. Under the express terms of the New Jersey act, gratuities received from the employer or others are excluded in ascertaining "wages." Cumulative Supplement to Compiled Statutes of New Jersey, 3868, c. 236–32 (g). In another connection, in *William Gilligan Co.* v. *Casey,* 205 Mass. 26, 32, "future wages" and "future earnings" were said to mean the same.

In 1914 it was ruled by the Industrial Accident Board in interpreting our act that tips were to be included in ascertaining the average weekly wages or earnings. *Hatchman's Case,* 2 Mass. Work. Comp. Cases, 419, 422. Presumably that decision has been followed in the subsequent years by the board in the absence of any adjudication by this court. It was said by Chief Justice Hughes in *Louisville & Nashville Railroad* v. *United States,* 282 U. S. 740, at page 757: "The principle is a familiar one that in the interpretation of a doubtful or ambiguous statute the long continued and uniform practice of the authorities charged with its administration is entitled to great weight and will not be disturbed except for cogent reasons." That principle has long prevailed in this Commonwealth. *Burrage* v. *County of Bristol,* 210 Mass. 299, and cases cited. *Tyler* v. *Treasurer & Receiver General,* 226 Mass. 306, 310. *Scott* v. *Commissioner of Civil Service,* 272 Mass. 237, 241. *First National Bank of Boston* v. *Commissioner of Corporations & Taxation,* 274 Mass. 583, 587.

It seems plain that from the standpoint of the employee the tips in the case at bar were in the nature of wages or earnings. The stipend paid to her by the employer was the

smaller part of the actual income received by her as
consequence of her labor for him. The situation was fully
understood and freely assented to by the employer. There
was no deception. No divided duty was thereby created
on the part of the employee. Her loyalty to the employer
was not alloyed by the courtesy and efficiency rendered to
patrons which were the basis of their gratuities to her. As
to each customer of the employer the tip to the employee
was a gift and not founded on an obligation, but the aggre-
gate thus received was dependable although fluctuating
according to the amount of patronage coming to the em-
ployer. Service may be rendered upon a reasonable expec-
tation of reward without forming the basis of a debt. The
tips were in the nature of part payment for the service
received by the patrons at the place of business of the
employer. Payments made to his employee by his patrons
with the approval of the employer, under the protection of
his place of business and for his benefit, bear a close analogy
to wages paid by him. There was nothing illegal in the
retention of tips by the employee in these circumstances.
If the employer had established a rule of his restaurant
forbidding tips, the direct wage expense to him probably
would have been increased to make up in substance for the
loss in revenue to the employees and that doubtless would
have been reflected in an increase in the prices charged to
patrons. The employer, in effect, saved in direct outgo for
wages the amount received by the employee in tips.

The idea of tipping is distasteful to some people who
would prefer to pay in increased charges enough to enable
the appropriate wage to be paid directly to the employee
by the employer. There is a feeling that tips are not in
harmony with the spirit of American institutions and that
they tend to put the recipient in a dependent or servile
position and to undermine independence of character.* It

---

* In some jurisdictions there have been statutes touching tips. Code of
Iowa (1927) §§ 13328–13330. See South Carolina, Acts of 1915, Act 162,
repealed by Act 541 of Acts of 1922; Crawford and Moses Digest of the
Statutes of Arkansas (1921) §§ 2849–2851, repealed by Act 232, Acts of
1925, page 678; Shannon's Annotated Code of Tennessee, §§ 6888a1–6888a6,
repealed by Acts of 1925, c. 116, page 389. G. L. c. 140, § 48.

...not be overlooked or ignored, however, that in certain employments the custom is almost universal in this Commonwealth. That condition must be recognized. It has in those employments a vital effect upon the terms and conditions of labor and the relations of employer and employee. It is a custom by which the employer in the case at bar reaped a financial benefit in the lower payments made by him each week to secure the services of the employee. Some difficulty may arise in fixing the rate of insurance to be charged by the insurer to the employer over that existing in cases where the payroll of the employer discloses all the earnings of the employee. But that cannot affect the principle. The employee, a part of whose earnings comes from tips received in consequence of his service to the employer, is bound to make full disclosure for the purpose of enabling just insurance rates to be fixed.

The meaning of "average weekly wages" in our act was discussed with some fulness in *Gagnon's Case*, 228 Mass. 334. The question of tips was not before the court in that case. The issue was quite different from that in the case at bar. Without impairing the binding force of what was there said, that decision does not require the conclusion that tips cannot be found to be a part of the average weekly wage in such circumstances as are disclosed on this record. The meaning of earnings in other connections has been considered in *Jason* v. *Antone*, 131 Mass. 534, and in *Chester* v. *McDonald*, 185 Mass. 54, 56. But there is nothing in those cases at variance with the present decision.

Attributing due weight to all these considerations and not emphasizing any one to the exclusion of others we are of opinion that the finding of the board to the effect that the tips constituted a part of the average weekly wage cannot be pronounced unwarranted in law. It hardly needs to be added that this decision is confined strictly to the facts here disclosed.

The result is that the decree is reversed and a decree is to be entered in favor of the employee on the basis of average weekly earnings of $20.

*So ordered.*