# Roberta O'Connell's Case.

No. 10-P-151.

Suffolk. December 7, 2010. - February 16, 2011.

Present: Rapoza, C.J., Meade, & Milkey, JJ.

*Workers' Compensation Act,* Average weekly wages, Decision of Industrial Accident Reviewing Board. *Employment Security.*

An administrative law judge of the Department of Industrial Accidents (DIA) did not err in declining to include tips in an injured employee's wages, for purposes of determining the amount of an award of workers' compensation benefits, on the ground that the employee had not reported such tips for tax purposes, either to the employer or to the Internal Revenue Service, where the judge relied on a previous administrative ruling of the DIA's reviewing board that reasonably interpreted the workers' compensation act, G. L. c. 152, by looking to the definition of "wages" under the unemployment insurance act, G. L. c. 151A, which prohibited the consideration of tip income in determining unemployment benefits unless such income had formally been reported to the employer in accordance with Federal tax law. [763-766]

Appeal from a decision of the Industrial Accident Reviewing Board.

*Charles E. Berg* for the employee.

*Michael J. Sherry* for the insurer.

Milkey, J. On July 25, 2006, Roberta O'Connell injured her shoulder while working as a cosmetologist at Rob Roy Coiffures (the employer). For this injury, O'Connell was awarded workers' compensation benefits pursuant to G. L. c. 152, §§ 34 and 35. The insurer, Peerless Insurance Co., acknowledged liability but contested the amount that O'Connell was due. An administrative judge (AJ) at the Department of Industrial Accidents (DIA) awarded O'Connell specified benefits that were based on his determination of the "average weekly wage" that she earned at the salon. In the only issue before us on appeal, O'Connell argues that the AJ erred by not including in her wages the tips that she received from her customers. The AJ refused

to do so, because she did not report the tips for tax purposes. We conclude that the AJ did not err in disregarding that income.

*Background.* O'Connell worked at the salon on a part-time basis. The employer paid her an hourly wage of $6.75 (the minimum wage), plus additional compensation based on the amount of work she performed. In this manner, O'Connell received an average of about $227 per week directly from her employer, which worked out to slightly more than $11 per hour. The AJ used this figure as her average weekly wage, and on this basis he awarded § 34 benefits of $136.51 per week for the four-month period she was totally incapacitated, and § 35 benefits of $102.38 for the two-month period she was partially incapacitated.

At an evidentiary hearing, O'Connell asserted — and the employer did not contest — that she regularly received tips from her customers. She specifically testified that she received total tips ranging from twenty-five to sixty-five dollars per day, and that her tips averaged forty-five dollars per day. While the insurer did not affirmatively concede the amount of O'Connell's tips, neither did it challenge her figures (in cross-examination or otherwise). Instead, the insurer focused on whether O'Connell had reported such tips for tax purposes, either to the employer or to the Internal Revenue Service (IRS) directly.

For purposes of this appeal, the insurer has established that O'Connell did not report her tip income directly to the IRS.[1] Further, it is uncontested that O'Connell never formally reported her tip income to her employer in the manner contemplated by Federal law. However, she asserts that the employer nevertheless had actual knowledge of the amount of her tip income because of the particular system that the employer used at the salon to collect and distribute tips. Specifically, when a customer tipped an employee, the tip was placed into a box labeled with that employee's name and the amount was recorded on paper. This was to occur regardless of whether the tip was given to the

---

[1]Although O'Connell testified that she "believe[d]" that she had reported her tips to the IRS, she acknowledged that she did not "know" this, and she did not bring a copy of any tax documents that could have proven her contention. The AJ found her testimony on this point not credible, and the employee does not challenge that finding on appeal.

person at the front desk or to the hair stylist directly.[2] At the end of each day, the employer would tally up the tips received for each employee and distribute the money accordingly. According to the employer, this procedure was to help ensure that the cash register balanced. At the end of each day, the employer would discard its informal tallies, and it thus kept no permanent record of each employee's tip income.

The AJ concluded that O'Connell forfeited her right to have her tip income included within her "average weekly wage" by failing to report her tips for tax purposes. He relied on an administrative ruling by the DIA's reviewing board, see *Dawson v. Captain Parker Pub*, 11 Mass. Workers' Comp. Rep. 84 (1997) (*Dawson*), and he offered his view that:

> "as in *Dawson*, I find that the Employee cannot have it both ways and should bear the burden of her failure to report her tip income rather than the Insurer, whose interest in the accurate setting of rates for the Employer, based on actual income information, is undeniably thwarted by the Employee's omission."

The reviewing board summarily affirmed the AJ's ruling.

*Discussion.* "[I]n cases of summary affirmance of a decision of the administrative judge by the board, the reviewing court is inspecting the findings and reasoning of the administrative judge." *Dalbec's Case*, 69 Mass. App. Ct. 306, 313 (2007), citing *Coggin* v. *Massachusetts Parole Bd.*, 42 Mass. App. Ct. 584, 587 (1997). Because the AJ relied on the reviewing board's earlier ruling in *Dawson*, our review of the AJ's decision will necessarily require us to consider the reasoning that the reviewing board employed there. We begin, however, by reviewing the Supreme Judicial Court's seminal case on the treatment of tip income, *Powers's Case*, 275 Mass. 515 (1931).

In *Powers's Case*, the court held that tip income generally should be included in an employee's "average weekly wages" for purposes of the workers' compensation act. However, that case did not squarely address whether tip income should still be

---

[2] At oral argument, the insurer expressed skepticism about the extent to which hair stylists put into the box any cash tips they received directly from customers. However, this point was never developed below.

included if the employee did not report the amount of that income to her employer.[3] In any event, even to the extent that *Powers's Case* can be read as suggesting that tip income should be included regardless of whether it was in fact reported, that would not resolve the issue before us, because — as discussed further below — the key statutory language at the heart of this dispute was not enacted until much later.

The workers' compensation act does not directly address whether unreported tip income should be considered in setting benefits. However, the unemployment insurance act does do so through a provision enacted in 1976. Specifically, that statute states that cash tips are to be included as "wages" "only in the amount reported by the employee to the employer pursuant to section 6053(a) of the Federal Internal Revenue Code."[4] G. L. c. 151A, § 1(*s*)(A)(6), as inserted by St. 1990, c. 154, § 5. The AJ placed great reliance upon this definition in reaching his con-

---

[3]In *Powers's Case*, the insurer had argued that tips should not be included in the calculation of "average weekly wage," because the employer would have no knowledge of how much tip income the employee received, and this in turn prevented the accurate setting of insurance rates. The court acknowledged this potential problem:

> "Some difficulty may arise in fixing the rate of insurance to be charged by the insurer to the employer over that existing in cases where the payroll of the employer discloses all the earnings of the employee."

*Id.* at 520. However, the court ultimately rejected this as a basis for concluding that tips should not be included, stating that the potential problem "cannot affect the principle." *Ibid.* The court added that: "The employee, a part of whose earnings comes from tips received in consequence of his service to the employer, is bound to make full disclosure for the purpose of enabling just insurance rates to be fixed." *Ibid.* By this last sentence, it is not clear if the court was saying that employees could be expected to comply with their reporting obligations so that the potential difficulties would not materialize, or that the problem would be addressed by making the employee's reporting his tip income a precondition to his receiving credit for it. The court's opinion does not state whether the employee there — who ultimately received the benefit of the higher wage calculation — did in fact report her tips. *Powers's Case* therefore does not definitively resolve how unreported tip income should be treated.

[4]Section 6053(a) mandates that employees who receive tips of the sort at issue in this case "shall report all such tips in one or more written statements furnished to his employer on or before the 10th day following such month. Such statements shall be furnished by the employee under such regulations, at such other times before such 10th day, and in such form and manner, as may be prescribed by the Secretary [of the Treasury]." 26 U.S.C. § 6053(a).

clusion that unreported tips should be disregarded in determining workers' compensation benefits, as did the reviewing board in *Dawson, supra.*

Even though *Dawson* is an administrative decision that is not binding on this court, O'Connell does not claim that *Dawson* was wrongly decided. Instead, O'Connell argues only that *Dawson* should be applied narrowly. She argues that the key question should not be whether the tip income was reported for tax purposes, but instead whether an employer had sufficient knowledge of the tip income to allow its insurer to accurately determine insurance rates (the concern identified by the Supreme Judicial Court in *Powers's Case*, see note 3, *supra*). Under the particular facts present here, O'Connell asserts that the employer had actual knowledge of how much each employee received in tips each day, even though the employer chose to discard this information at the end of the day.

There is some force behind O'Connell's argument. First, to the extent that the animating concern is the inability to set accurate insurance rates, the fact that the employer here actually had access to the amount of tip income each employee was earning goes at least part of the way to satisfying that concern. Second, although the AJ's observation that the employee was trying to "have it both ways" is undeniably true, the same can be said of the employer.[5] However, it is not our job to weigh such competing policy considerations; instead, that role falls to the Legislature and, to the extent the Legislature delegates the issue, to the DIA. The narrow issue before us is whether the reviewing board's interpretation of the DIA's legislative charge is a reasonable one. See *Provencal* v. *Commonwealth Health Ins. Connector Authy.*, 456 Mass. 506, 514 (2010) ("substantial deference" owed to agency's interpretation of statute it administers). We conclude that it is.

The workers' compensation act and the unemployment insurance act provide parallel worker protection schemes. Both are

[5]Although the employer knew that its employees were earning tip income and in fact determined each day how much tip income each employee earned that day, the employer was apparently happy to ignore such income unless the employees formally reported it (all the while presumably enjoying lower insurance rates and smaller tax obligations for the employer share of Federal or State taxes).

designed to provide workers benefits when their ability to work is limited, the first by injury, and the second by economic conditions. See *Bradley's Case*, 56 Mass. App. Ct. 359, 362 n.5 (2002). There was no error in the reviewing board's looking to the legislative definition of "wages" in G. L. c. 151A for guidance in interpreting G. L. c. 152. In fact, the Supreme Judicial Court has expressly approved doing just that. See *Borofsky's Case*, 411 Mass. 379, 380 (1991) (relying in part on the definition of "wages" in G. L. c. 151A, in affirming a decision of the reviewing board excluding health insurance benefits from an employee's "earnings" for purposes of the workers' compensation act).[6] See generally *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 247 (1993) (noting that courts should look to related statutes for interpretive guidance). In sum, where the Legislature has prohibited the consideration of tip income in determining unemployment benefits unless such income has formally been reported to the employer in accordance with Federal tax law, we discern no error in the reviewing board's decision to treat such income in the same manner for purposes of the workers' compensation act.

> *Order of the Department of Industrial Accidents Reviewing Board affirmed.*

---

[6]As the court in *Borofsky's Case* noted, G. L. c. 152 expressly incorporates some aspects of G. L. c. 151A by reference. Specifically, pursuant to G. L. c. 152, § 1(9), added by St. 1985, c. 572, § 13, an employee's "average weekly wage in the commonwealth" is to be "determined according to the provisions of subsection (a) of section twenty-nine of chapter one hundred and fifty-one A." In *Dawson*, the reviewing board made a suggestion that this cross-reference necessarily imports into G. L. c. 152, the definition of "wage" included in G. L. c. 151A, § 1(s)(A)(6) (in which case the board would be required to exclude unreported tip income from "wages"). *Dawson*, 11 Mass. Workers' Comp. Rep. at 86. However, *Borofsky's Case* does *not* treat the c. 151A definition of "wage" as being directly incorporated into c. 152; instead, the case notably highlights that the scope of c. 151A, § 29(*a*), is limited to "the method of computing the average weekly benefits and [that it] does not identify the variables considered when computing that average." *Borofsky's Case*, 411 Mass. at 380. In any event, *Dawson* makes plain the reviewing board's view that unreported tip income should be excluded regardless of whether the board is bound to that conclusion. The question whether the board has discretion to treat such income in a different manner is not before us.