SKOGLUND, J., dissenting.
¶ 29. I believe that the majority opinion is inconsistent with the purpose of the workers' compensation law and dissent. I agree with my brother Eaton's dissent in this matter, which argues a fringe benefit of free college tuition cannot be considered remuneration pursuant to the Workers' Compensation Act, but write separately to argue that consideration of such fringe benefits in determining wages violates the premise and construction of the Workers' Compensation Act.
¶ 30. The purpose of the Act is to compensate for the loss of earning power as a result of a work injury, irrespective of the question of negligence; not to compensate for the loss of fringe benefits. Tuition-free course credits may be one advantage to working at Champlain College, but they are not provided in lieu of wages and, more significantly, they are not necessities of life that the injured worker would need during a period of disability. Unlike the in-kind components of a worker's lost earning capacity such as board, housing, and fuel, tuition-free course credits don't assist an injured worker who cannot earn their wages and should not be viewed as a form of wages to determine income replacement benefits for purposes of the Act.
¶ 31. Workers' compensation laws were designed to provide income, as well as medical and other benefits such as the vocational rehabilitation specified in some statutes, to workers injured during performance of their duties. See, e.g., *506 21 V.S.A. § 641. Though developments have confused that basic goal, with some states calculating payments by including fringe benefits that were not identified or considered when the law was passed, the majority of jurisdictions judicially or legislatively exclude fringe benefits. See, e.g., 33 U.S.C. § 902(13) ("The term wages does not include fringe benefits, including (but not limited to) employer payments for or contributions to ... training ...."). For example, while Vermont has decided that employer contributions to health insurance plans are not intended to be part of an employee's average weekly wage, Lydy v. Trustaff, Inc., 2013 VT 44, ¶ 19, 194 Vt. 165, 76 A.3d 150, Washington state interpreted its statute to include health insurance benefits in the calculation of wages. See Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 16 P.3d 583, 594 (2001).
¶ 32. In most cases, such disparities can be viewed as differences in statutory authorizations or requirements of contractual employment. In this case, the governing statute does not authorize inclusion and there is no contract of employment that mandates inclusion. I suggest the appropriate discussion should focus on whether the benefit is provided in lieu of salary and is critical to protecting the employee's basic health and survival, a position that would honor the intent of workers' compensation laws.
¶ 33. In Morrison-Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs, the U.S. Supreme Court held that employer contributions to union trust funds for health and welfare, pensions, and training were not "wages" for purposes of computing compensation benefits. 461 U.S. 624, 637, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983). The question presented to the Court required the Court to interpret the term "wages" in the Longshore and Harbor Workers' Compensation Act (LHWCA), which was enacted in 1927 in response to decisions of the Court limiting the authority of the states to apply their workers' compensation laws to injured maritime workers. Id. at 626, 103 S.Ct. 2045 ; 33 U.S.C. § 902(13) (defining wages). It was patterned after existing state workers' compensation laws. Morrison-Knudsen Constr. Co., 461 U.S. at 640, 103 S.Ct. 2045 (Marshall, J., dissenting). The definition of "wages" incorporated in the LHWCA "was lifted almost verbatim from the New York statute." Id.
¶ 34. When Congress used New York's statutory language, the recognized aim of the New York workers' compensation scheme was to compensate for "the loss of earning power incurred in the common enterprise, irrespective of the question of negligence." N.Y. Central R.R. v. White, 243 U.S. 188, 204, 193, 37 S.Ct. 247, 61 L.Ed. 667 (1917) ("Compensation under the act is not regulated by the measure of damages applied in negligence suits, but, in addition to providing surgical, or other like treatment, it is based solely on loss of earning power .... "). Thus, the LHWCA, like the New York law, focused on an employee's loss of earning capacity as a result of an occupational injury. Id. at 204, 37 S.Ct. 247.
¶ 35. At the time of Morrison-Knudsen, § 902(13) of the LHWCA defined "wages" for the purpose of computing compensation benefits as meaning "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging or similar advantage received from the employer." 461 U.S. at 629, 103 S.Ct. 2045. Looking at the plain language of the statute, the U.S. Supreme Court in Morrison-Knudsen first held that the value of the trust funds was not easily converted into a cash equivalent and that the *507 value could not be measured by an employee's expectation interest for that interest is at best speculative. 461 U.S. at 630-31, 103 S.Ct. 2045.
¶ 36. Then the Supreme Court looked to the legislative history of the LHWCA and concluded that history provided "abundant indication that Congress did not intend to include employer contributions to benefit plans within the concept of 'wages' [in the LHWCA]." Id. at 632, 103 S.Ct. 2045. The Court noted that "employer-funded fringe benefits were virtually unknown" in 1927 when the LHWCA was enacted and opined that, notwithstanding amendments and a "substantial revision in 1972, there [was] no evidence in the legislative history indicating that Congress seriously considered the possibility that fringe benefits should be taken into account in determining compensation under the [LHWCA]." Id.
¶ 37. The U.S. Supreme Court recognized that "the [LHWCA] was not a simple remedial statute intended for the benefit of the workers." Id. at 636, 103 S.Ct. 2045. "Rather, [the LHWCA] was designed to strike a balance between the concerns of the [workers] ... and their employers." Id."Employers relinquished their defenses to tort actions in exchange for limited and predictable liability [while] [e]mployees accept[ed] the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail." Id. The Court held that "reinterpretation of the term 'wages' would significantly alter the balance achieved by Congress [in the Act]." Id. In addition, acknowledging that employers calculate "their compensation costs on the basis of their cash payroll," the Supreme Court held that the "shift in the relative value of take-home pay versus fringe benefits dramatically alters the cost factors upon which employers and their insurers [rely] in ordering their affairs." Id."If these reasonable expectations are to be altered, that is a task for Congress." Id.
¶ 38. The respondent in Morrison-Knudsen argued that the incentive to trade salary for benefits should not be diluted by failing to consider the value of the benefits in determining "wages." Id. at 635, 103 S.Ct. 2045. The trade-off described in Morrison-Knudsen is not present in this case-there was no trade-off of free tuition in exchange for less salary. The Supreme Court's rejection of the argument, however, supports the position of this dissent. The Court wrote, "[A] comprehensive statute such as this Act is not to be judicially expanded because of recent trends." Id. (quotation omitted).
¶ 39. In Lydy, the Commissioner concluded that employer-provided health insurance premiums were not part of an employee's wages and therefore were not part of the claimant's average weekly wage computation. 2013 VT 44, ¶ 3, 194 Vt. 165, 76 A.3d 150. In rejecting the inclusion of these benefits in the average weekly wage, the Commissioner held that this would "dramatically impact the delicate balance that the workers' compensation act seeks to maintain between employers and employees." Id. (quotation omitted). Finally, she concluded that the interpretation "was not appropriate for alteration by administrative fiat and that any such change was better left for the Legislature." Id. Exactly.
¶ 40. In Lydy, this Court noted that health insurance, as it exists today, did not develop until the late 1920s and held that, because the Legislature did not amend the definition of "wages" "to include employer-paid health insurance after it developed into a customary benefit, it is prudent to conclude that such a benefit was not intended to be part of an employee's average weekly wage." Id. ¶ 11. We further held that the claimant's argument conflated employers'
*508 costs with employees' remuneration and noted that the U.S. Supreme Court rejected this approach in Morrison-Knudsen. Id. ¶ 13.
¶ 41. In 2013, we found the Supreme Court's rationale in Morrison-Knudsen persuasive. I do not know why it is rejected in this case. The majority states that this Court's decision in Lydy found that the value of the health insurance coverage actually received by the employee was speculative as was the benefit to the employee from the employer's contributions to the trust fund in Morrison-Knudsen. Ante, ¶ 15. This is not accurate. In Lydy we held "the employer's contribution for health insurance, though determinable, does not accurately reflect the employee's labors or compensation as defined through wages." Id. ¶ 14 (emphasis added). The same is true of free tuition-it does not reflect, in any way, the employee's labors or compensation as defined through wages.
¶ 42. As we noted in Lydy, because our workers' compensation statute differs from those in other states, looking to other jurisdictions for authority is useless. However, the rationales used in other states can be illuminating.
¶ 43. Massachusetts law specifically states "such fringe benefits as health insurance plans, pensions, child care, or education and training programs provided by employers shall not be included in employee earnings for the purpose of calculating average weekly wages." Mass. Gen. Laws ch. 152, § 1(1). Massachusetts courts have reasoned that some fringe benefits are to be included in the calculation as they "bear a close analogy to wages paid by the employer." In reBorofsky, 411 Mass. 379, 582 N.E.2d 538, 539 (1991) (quotation omitted). Sales commissions, tip income, and room and board have been included in the calculation. In rePowers, 275 Mass. 515, 176 N.E. 621, 622 (1931). And, in James Roberts, Central Heating & Cooling, American Mutual Insurance, the court held that a company car was provided to employee "in lieu of an additional wage of $2 per hour," and should be included in the wage calculation. 9 Mass. Workers' Comp. Rep. 431, 432 (1995). Thus, the general rule in Massachusetts is that if a fringe benefit is considered an explicit, express, or direct wage substitute, it may be included in the calculation of wages.
¶ 44. Here the opportunity to collect free tuition credits does not bear a close analogy to wages. Claimant did nothing to earn the opportunity for free tuition credits. The value of same is not similar to sales commissions or the use of a company car provided in lieu of additional wages. If the workers' compensation law is to be expanded so dramatically, are we to include free parking spaces or access to an in-house exercise facility in the calculation of wages?
¶ 45. Apparently, because the benefit at issue here-free tuition-"is clearly an 'advantage' of considerable economic value" and "can be estimated in money," the majority would add that value of the credits to her salary to determine the employee's wage. Ante, ¶ 17. However, any such reinterpretation of the term "wages" would significantly alter the balance achieved by the Legislature in promulgating the Act. The resulting shift will alter the cost factors upon which employers and their insurers rely. I agree with the approach of the U.S. Supreme Court expressed in Morrison-Knudsen that "[i]f these reasonable expectations are to be altered, that is a task for [the Legislature]." 461 U.S. at 636, 103 S.Ct. 2045.
¶ 46. The purpose of the workers' compensation law is to provide a remedy for employees that is "both expeditious and independent of proof of fault" as well as a remedy for employers that is limited and *509 determinate. Kittell v. Vt. Weatherboard, Inc., 138 Vt. 439, 441, 417 A.2d 926, 927 (1980) (quotation omitted). We cannot overlook the fact that the rights of employers as well as the rights of employees are safeguarded by the Act's provisions. See also Quinn v. Pate, 124 Vt. 121, 124, 197 A.2d 795, 797(1964).
¶ 47. The ramifications of the majority's decision will extend beyond this case with a likely increase in cost to employers for workers' compensation coverage and to employers who self-insure. Including in the calculation of weekly wage any fringe benefits that are not paid in lieu of wages or are not an explicit substitute for wages will create a morass that will overwhelm employers and the workers' compensation system.
¶ 48. The phrase "board, lodging, fuel and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration" should be read to mean readily identifiable and reasonably calculable in-kind components of a worker's lost-earning capacity at the time of injury that are critical to protecting workers' basic health and survival. 21 V.S.A. § 601(13). The Legislature provided that these categories should count as "wages" because they are necessities of life, without which the injured worker cannot survive a period of even temporary disability. Contributions to retirement, life insurance, golf green fees, or free tuition are not necessities of life without which an injured worker cannot survive.
¶ 49. I dissent.
¶ 50. I am authorized to state that Justice Eaton joins this dissent.